Vera Zabala CLEMENTE et
al., Plaintiffs,

v.

The UNITED STATES of America,
Defendant.

Civ. Nos. 778–73, 779–73, 999–73,
1000–73 and 1096–73.

United States District Court,
D. Puerto Rico,
San Juan Division.

Feb. 4, 1977.

Speiser, Krause & Madole, Washington, D. C., for plaintiffs.

Michael J. Pangia, Dept. of Justice, Washington, D. C., Julio Morales Sanchez, U. S. Atty., District of Puerto Rico, San Juan, P. R., for ·defendant.

OPINION AND ORDER

TORRUELLA, District Judge.

The Government has filed a "Motion for Reconsideration" to the Opinion and Order entered herein on November 24, 1976.

Before discussing the merits of said Motion, we are constrained to correct an erroneous impression created by Counsel for Defendant, in quoting out of context the Court's Order of August 11, 1976. Defendant chose to file post-trial briefs limited to the issue of the "discretionary function" defense, contrary to the directives of our Order of August 11, 1976, wherein the parties were required to file proposed findings of fact and conclusions of law together with their briefs. Because of this situation an over-burdened Court is now forced to consider matters which should properly have been brought to its attention at the time post-trial briefs were filed rather than by way of reconsideration.

The gist of Defendant's present Motion is the contention that F.A.A. Order SO 8430.-20 C cannot be the basis for an action under Puerto Rican law, and thus under the Federal Tort Claims Act. Defendant further claims that the acts or omissions of the Government were not the proximate cause of the crash. We disagree on both points.

The Federal Tort Claims Act, 28 U.S.C. § 1346(b), permits civil tort actions for money damages against the United States caused by the negligent or wrongful act or omission of Government employees under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The fountainhead of tort law in Puerto Rico is Article 1802 of the Civil Code (31 LPRA 5141), which states in its relevant part:

"A person who by an *act or omission* causes damage to another through *fault or negligence* shall be obliged to repair the damage so done. . . ." (Emphasis supplied).

Without unnecessarily digressing into pedantic legal philosophy, suffice it to say that this article establishes what is probably the broadest basis for tort liability in any jurisdiction of the United States.

In the leading case of *Reyes v. Heirs of Sánchez Soto*, 98 P.R.R. 299 (1970), the Supreme Court of Puerto Rico stated, at pages 303–304 thereof:

"The concept of fault of Sec. 1802 of the Civil Code—1930 ed.—is infinitely embracing, *as ample and embracing as human conduct is.* J. Casares, in his 'Diccionario Ideológico', 2d ed. 1963, defines guilt as 'fault more or less serious, committed knowingly and willfully.' And 'fault' as '*defect in acting.*' *Cabanellas* states that 'guilt' in its ample sense means any fault, willful or not, of a person which produces a wrong or damage, in which case 'guilt' is equivalent to 'cause.' " (Emphasis supplied).

The Court goes on to state (in footnote 1) that "the Saxon concept of civil fault is equally embracing" and then cites Black's Law Dictionary's definition of "fault":

"[A]n error or defect of *judgment* or of conduct; any deviation from prudence, *duty*, or rectitude; any shortcoming, or neglect of care or performance resulting from *inattention*, incapacity, or perversity; a wrong tendency, course, or act; bad faith or *mismanagement*; *neglect of duty.*" (Emphasis supplied).

See also Puig Brutau, "Fundamentos de Derecho Civil" (1956), Tomo II, Volumen II, pp. 676–683; Manresa, "Código Civil Español", 1951 Ed., Vol. XII, pp. 637–659.

In this case we are concerned precisely with neglect of duty, a duty created in a general manner by Congress when it enacted the *Federal Aviation Act of 1958* (49 U.S.C. § 1301, et seq.) and thereafter, in a more precise fashion, as a result of the experiences of the F.A.A., by that Agency's promulgation of Order SO 8430.20 C. Had the requirements of this Order been included in the Statute itself, we doubt that the Government would be in a position, leaving aside for the moment the question of causation, to assume its present stance (see page 21 of the Government's Memorandum).

In its Motion, however, the Government takes the position that there is no liability because the Order is "an internal agency enforcement directive." Defendant is circumspect in not questioning the validity or

authority of the Order (see 49 U.S.C. § 1421(a), (b); 14 CFR 11.21(c)), but rather contends that the violation of "orders not duly promulgated as regulations [does not] constitute [. . .] negligence *per se.*"

Even assuming such were the basis for our decision, there is at least one leading case to support this position. *Eastern Air Lines v. Union Trust Co.,* 113 F.Supp. 80 (1953), 95 U.S.App.D.C. 189, 221 F.2d 62 (1955) reversed on other grounds, 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796 (1955), order of reversal modified and case remanded, 350 U.S. 962, 76 S.Ct. 429, 100 L.Ed. 835 (1956). In that case, an air traffic pattern was published in the Airman's Guide but not in the Federal Register. The trial court charged the jury that the traffic pattern was a binding regulation, deviation from which was negligence *per se.* The airline in question admittedly had knowledge of the pattern, as did the F.A.A. personnel in San Juan have knowledge of SO 8430.20 C. The Court in *Union Trust* found the pattern to be "prescribed by rule which has the force and effect of law." 221 F.2d at p. 69. We fail to see why SO 8430.20 C should not also have the force of law, particularly when it is the basis of a claim by the parties the Order was intended to protect. Cf. *Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Columbia Broadcasting Sys. Inc. v. U. S.,* 316 U.S. 407, 422, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); *United States v. Heffner,* 420 F.2d 809, 812 (CA 4, 1970); *Smith v. Resor,* 406 F.2d 141 (CA 2, 1969). See generally, Note, "Violations by Agencies of Their Own Regulations", 87 Harv.L.Rev. 629 (1974). Also Davis, "Administrative Law Treatise", Vol. 1, Sec. 610.

There are several other cases in which internal agency directives have been held to establish an actionable duty by those intended to be benefited by the directive. In *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227 (CA 2, 1967) a duty to report weather conditions to aircraft was found to be created by the "Air Traffic Control Procedures Manual" of the F.A.A. A similar conclusion was reached by the Fifth Circuit in *Hartz v. United States,* 387 F.2d 870 (CA 5, 1968). See also *Stork v. United States,* 278 F.Supp. 869 (D.C.E.D.Wisc., 1968) (regulations, instructions, custom and practice). Cf. *United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (CA 9, 1964).

Irrespective of whether violation of Order SO 8430.20 C is found to be negligence *per se,* or merely evidence of negligence, the record as a whole supports an ultimate finding of negligence or fault by the F.A.A. We will not restate herein the contents of our prior decision. The following summary of the more salient facts should be sufficient when considered in the light of the duties created by the Statute and SO 8430.-20 C: Rivera had a recent (i. e. 1971) record of violations of F.A.A. regulations for transportation of persons or property without proper certification; at the time of the present accident, Rivera was under investigation for another incident, in which the F.A.A. investigator had already concluded that Rivera was guilty of careless and reckless operation of an aircraft; the San Juan Office of the F.A.A. was aware that Rivera was advertising for lease the aircraft here in question; the F.A.A. in San Juan was aware of the specific flight subject of this suit at least from the time the flight plan was filed (see Item 6, Plaintiff's Exhibit 1) simultaneously with a Custom Declaration form, about 5 hours before take off; at take off the aircraft was overloaded by 4,193 pounds in excess of its maximum allowable gross take off weight and lacked its full complement of crew;[1] N 500 AE crashed because No. 2 engine was "overboosted" and failed by reason of overloading of the aircraft and of inadequate crew.[2]

The existence of SO 8430.20 C in substantially the same form since April 5, 1971, not

---

1. This flight was required to have, a flight engineer. To the extent that our prior opinion held that Rivera was not authorized to fly as copilot, said finding is modified pursuant to 14 CFR 61.16 and 61.3(a).

2. See the testimonies of Delgado Cintrón and F.A.A. inspectors Villafañe and Davis.

**4**

only establishes a standard of duty but clearly brings forth the foreseeability of the present situation particularly when the facts previously stated are taken into consideration.

■ We will not reiterate the analysis contained in our previous Opinion regarding the mandatory nature of SO 8430.20 C. Nothing in Defendant's Motion has caused us to alter our Opinion to the effect that it was mandatory, and required a ramp inspection of N 500 AE before it departed, an inspection which admittedly did not take place because of a decision by local F.A.A. personnel to inspect only arriving aircraft.[3] We have no doubt that had such an inspection taken place it would have been readily apparent to the F.A.A. inspector that the aircraft was overloaded and inadequately crewed.[4] As stated in our decision of November 24, 1976, Defendant was required to warn Plaintiff's decedents of this unsafe situation.

■ In our opinion, the failure of the F.A.A. to meet the duties established by an Order which had the force of law, was *a* cause of the accident here in question. Even if not the *only* cause, the Defendant is responsible in this jurisdiction for his fault because the damages which resulted from the breach of duty were a natural, probable and foreseeable consequence of Defendant's omission. *Gines v. Aqueduct and Sewer Authority*, 86 P.R.R. 490, 496–497 (1962); *Reyes v. Heirs of Sánchez Soto*, supra. The intervening negligence or fault of third parties, if such were the case herein, does not relieve a defendant from liability in this jurisdiction where, as in the present case,

the intervening party was aided by the Defendant's fault, or where the actions of said party were foreseeable within the chain of circumstances set in motion or contributed to by Defendant. *Gines*, supra; *Pabón Escabí v. Axtmayer*, 90 P.R.R. 20 (1964).

■ Contrary to what Defendant herein seems to contend, Plaintiffs do not have to exclude all possible causes of the accident before we can reach a conclusion as to Defendant's fault. Rather, the standard is that Plaintiff establish facts upon which a reasonable person can be convinced, by the preponderance of the evidence, that the wrongful act was caused or contributed to by Defendant's fault. *Prieto v. Maryland Casualty Company*, 98 P.R.R. 583, 615 (1970). This we believe the Plaintiffs have done.

The Motion for Reconsideration is hereby denied.

The Court being of the opinion that the decision in this case falls within the purview of an interlocutory appeal as contemplated by 28 U.S.C. § 1292(b), and that such an immediate appeal would materially advance the ultimate termination of this litigation, Defendant is hereby ordered to file an application for interlocutory appeal to the Court of Appeals, within 10 days from the date of this Order.

IT IS SO ORDERED.

---

3. The allegation that the duty inspector of that day was engaged in accident investigation, which according to SO 8430.20 C had higher priority, seems to be an afterthought. In the first place, since pursuant to instructions only arriving craft would be inspected, the fact that the duty officer was otherwise engaged would seem to be an irrelevant factor. Furthermore, the deposition of Mattern indicates that, at least at the times relevant herein, he was in his home. Lastly since Paragraphs 3 and 9 of the Order required the use of irregular or modified workweeks, it was incumbent on Defendant to

prove that no one other than Mattern was available.

4. Defendant's present protestation about the difficulties of determining the weight of a loaded aircraft seem equally hollow and might induce us to conclude that the Order was not complied with because of the required effort rather than the other excuses given. It would seem that if an Order was issued by an agency with the expertise of the F.A.A., that impossible tasks would not be required of its personnel.