Vera ZABALA CLEMENTE et al.,
Plaintiffs, Appellees,

v.

UNITED STATES of America,
Defendant, Appellant.

No. 77–1156.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1977.

Decided Dec. 16, 1977.

As Amended Jan. 23, 1978.

**1142**

Michael J. Pangia, Trial Atty., Aviation Unit, U. S. Dept. of Justice, Washington, D. C., with whom Julio Morales-Sanchez, U. S. Atty., San Juan, P. R., and Jonathan M. Hoffman, Atty., Washington, D. C., were on brief, for defendant, appellant.

Stuart M. Speiser, Washington, D. C., with whom Speiser, Krause & Madole, Washington, D. C., was on brief, for plaintiffs, appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, CRARY, District Judge.*

COFFIN, Chief Judge.

On December 31, 1972 Roberto Clemente, two other passengers and two crewmen were killed in the crash of a private plane off the coast of Puerto Rico. Clemente, an

* Of the Central District of California, sitting by designation.

outstanding professional baseball player, had chartered the aircraft to carry relief supplies to the victims of an earthquake in Nicaragua. Plaintiffs, the relatives and representatives of the deceased passengers, sued the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671 *et seq.*), alleging that employees of the Federal Aviation Administration (FAA) acted negligently in failing to warn Clemente and the other passengers that the aircraft they were about to embark on was overweight and lacked a proper flight crew. Further details of the accident and the events preceding it are described at length in the district court's opinion, 422 F.Supp. 564 (D.P.R.1976).

A prerequisite for recovery under the Federal Tort Claims Act is that there be a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person,* would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) [emphasis added]. Here the law of Puerto Rico is controlling.

In denying the government's motion for reconsideration of the court's original opinion and order, the district court pointed out, 426 F.Supp. 1 (D.P.R.1977), that Article

1802 of the Puerto Rico Civil Code (31 LPRA 5141)[1] creates an extremely broad "basis for tort liability". While the civil law concept of fault may indeed appear to be sweeping, we do not understand the district court to suggest that it is tortious conduct in Puerto Rico to fail to inspect another person's property or vehicle and consequently to warn him of impending injury unless the alleged tortfeasor has some duty to the victim requiring the performance of these protective measures. Indeed, the court acknowledges that "In this case we are concerned precisely with neglect of duty . . .", 426 F.Supp. at 2. Moreover, none of the cases cited to us by the district court or appellees have found liability in such a situation.[2]

The critical question then is whether the FAA staff in Puerto Rico was under a duty to inspect the aircraft and to warn plaintiffs' decedents of any irregularities. The district court found that such a duty was created "in a general manner" when Congress passed the Federal Aviation Act and "in a more precise fashion" through the issuance of Order SO 8430.20C[3] by the Director of the Southern Region. The court concluded that since the Southern Region's order was mandatory and had the "force of law", it established an actionable duty to those whom the order sought to protect.

---

1. Article 1802 states that "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. . . ."

2. The facts of all the cases cited by the district court or appellees involve relationships that would create liability under traditional tort doctrines. *See Reyes v. Heirs of Sanchez Soto,* 98 P.R.R. 299 (1970) (duty not to misrepresent information on which others relied); *Prieto v. Maryland Casualty Co.,* 98 P.R.R. 583 (1970) (duty of lessor to deliver equipment to lessee in safe operating condition); *Rivera v. Maryland Casualty Co.,* 96 P.R.R. 788 (1968) (duty of home owner to guest); *Pabon Escabi v. Axtmayer,* 90 P.R.R. 20 (1964) (duty of hotel keeper to protect person and property of guests); *Gines v. Aqueduct and Sewer Authority,* 86 P.R.R. 490 (1962) (duty not to install meter on public walkway so that it created a hazard); *Ramos v. Carlo,* 85 P.R.R. 337 (1962) (duty of store owner not to throw refuse in street where

pedestrians can trip on it); *Correa v. P. R. Water Resources Authority,* 83 P.R.R. 139 (1961) (unmarried woman living with man for many years allowed to sue for breach of duty to prevent his wrongful death); *Hernandez v. Fournier,* 80 P.R.R. 94 (1957) (parents may sue person who intentionally killed their daughter).

3. The relevant parts of the order are printed in their entirety on pp. 570–71 of the district court opinion. The exact wording of section 7d that "Clear indication of alleged illegal flight should be made known to flight crew and persons chartering the service" is critical to the district court's analysis. The district court concluded that the FAA had obligated itself to warn the passengers of the flight of any safety problems, and this section of the order is the only language from which such an obligation could be inferred. We shall assume arguendo that the Order did require a warning to the passengers of the flight in question.

■ This analysis oversimplifies a complicated legal situation. It is obvious that one of the purposes of the Federal Aviation Act was to promote air travel safety; but this fact hardly creates a legal duty to provide a particular class of passengers particular protective measures. While the Federal Aviation Act empowered the administrative staff of the FAA to issue an order such as SO 8430.20C, the Act itself does not require this conduct.[4] The agency, in issuing the order, was acting entirely gratuitously and was under no obligation or duty to plaintiffs' decedents or any other passengers.

Given this general scope of statutory authority and the lack of any specific legislative mandate concerning the measures allegedly required by the Southern Region's order, the issue is whether the promulgation of that order created a duty of care on the part of the government to plaintiffs' decedents in light of the Federal Tort Claims Act's requirement that the United States be held liable only if private parties would be liable for comparable conduct. We sympathize with the district court's struggles in attempting to apply the Tort Claims Act's conceptually difficult provision. Because the powers of the United States are so vast and because the government necessarily includes a wide variety of institutional forms and legal relationships, the United States cannot easily be envisioned as a single entity in the "man in the street" world of common law torts.

■ Much of the problem results from the fact that the government frequently acts in a sovereign capacity. In one sense whatever the government says is law. However, for the purposes of the Federal Tort Claims Act the sovereignty of the government must, in many cases, be ignored. Clearly "no private individual has power to assume the prerogatives of sovereignty", *Union Trust Co. of District of Columbia v. United States*, 113 F.Supp. 80, 82 (D.D.C.1953). It was therefore perhaps understandable that the government would argue that when it acted in its sovereign capacity it was excluded from liability under the Act since there could be no comparable private conduct. The courts, recognizing that such a doctrine would unduly restrict the scope of the Act beyond the intent of Congress, have consistently rejected this "sovereignty" defense at all judicial levels. *See, e. g., Union Trust Co., supra; Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). But this decision to ignore the government's sovereignty operates in the reverse direction as well. Just as the government cannot invoke sovereignty as a defense to distinguish its conduct from that of private persons, plaintiffs cannot use the implicit sovereignty of the government to argue that all its internal communications establish standards of care similar to those created by duly promulgated laws of general application. Not all acts and orders of the United States government are so sovereign that they must be treated as commands which create legal duties or standards, the violation of which involves breaking the law. A considerable part of the government's conduct is in the context of an employer-employee relationship, a relationship which includes reciprocal duties between the government and its staff, but not necessarily a legal duty to the citizenry.

■ In the present case a member of the FAA staff, in an attempt to implement agency policy, ordered the Flight Standards District Office to take certain steps regarding the surveillance of large turbined powered aircraft. Even assuming, as plaintiffs contend, that this order was mandatory, the duty it creates is that of the District Office employees to perform their jobs in a certain way as directed by their superiors. This

---

4. 49 U.S.C. § 1354 reads:

 "Other powers and duties of Administrator. —(a) General.—The Administrator is empowered to perform such acts, to conduct such investigations, to issue and amend such orders, and to make and amend such general or special rules, regulations, and procedures, pursuant to and consistent with the provisions of this Act, as he shall deem necessary to carry out the provisions of, and to exercise and perform his powers and duties under, this Act."

duty to comply with the directives of their superiors is owed by the employees to the government and is totally distinguishable from a duty owed by the government to the public on which liability could be based. The failure to perform the order may be grounds for internal discipline, but it does not follow that such conduct necessarily constitutes the kind of breach cognizable by tort law.[5]

 The appropriate analogy to private life seems to be that of a corporate employer who has hired a safety director to insure that the firm's business environment is free from accidents and health hazards. Acting entirely within his authority the safety director orders his staff to check that other firms in the vicinity are meeting fire regulation standards. If one such employee fails to inspect a nearby firm's building and if it burns to the ground thereafter because of unsafe conditions which would have been rectified had the employee carried out his assigned task, is either the employee or the employer liable for this failing? We think not. No Puerto Rico case alleging a remotely similar basis for liability has been

brought to our attention.[6] Moreover, the Restatement of Torts 2d §§ 323 and 324A[7] makes it clear that liability in such a situation must be predicated on one of three grounds: the conduct of the employee actually increased the risk of harm to the damaged firm; the harm to the damaged firm resulted from its reliance on the employee carrying out the inspection as ordered; or there existed a prior duty to inspect owed by the employer to the damaged firm. *See generally Davis v. Liberty Mut. Ins. Co.*, 525 F.2d 1204 (5th Cir. 1976). None of these conditions apply to our analogy or to plaintiffs' claims in the matter before us. There was no underlying statutory duty to offer special protection to plaintiffs' decedents; the failure to inspect in no way added to the risk of injury to the passengers or crew; and there is no evidence that anyone relied on the contents of SO 8430.20C and limited their own safety precautions accordingly. Therefore there can be no basis for liability under general principles of tort law and the Federal Tort Claims Act.

 To hold otherwise would be to interpret every command made as an exercise

---

**5.** *Gercey v. United States*, 540 F.2d 536 (1st Cir. 1976), although similar in some respects to the present case, is not relevant to the problem before us. That case simply concluded that the Coast Guard cannot be liable under the Tort Claims Act for "failing to adopt a policy of taking positive steps to protect the public . . . ." *Id.* at 538. Our proviso that had the issue in *Gercey* been based on allegations that the Coast Guard had "imperfectly execut[ed] a federal program established either by an act of Congress or a federal regulation", *id.*, the case would have required a different analysis, provides no support for plaintiffs' position. The Southern Region's directive was neither a statute nor a regulation. Moreover, our citation to *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) indicates that our proviso was limited to the imperfect execution of policy on which the public relied.

**6.** *See* note 2, *supra.*

**7.** The pertinent provisions of the Restatement of Torts 2d read as follows:

"§ 323. Negligent Performance of Undertaking to Render Services
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for

the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
(a) his failure to exercise such care increases the risk of such harm, or
(b) the harm is suffered because of the other's reliance upon the undertaking."
"§ 324A. Liability to Third Person for Negligent Performance of Undertaking
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."
*See generally Jeffries v. United States*, 477 F.2d 52 (9th Cir. 1973).

of discretion by the supervisory or administrative staff of any federal agency as creating a duty of the federal government to the beneficiaries of that command such that the government would be liable to the beneficiary if the command was not carried out.[8] We do not believe the Federal Tort Claims Act was intended to expose the government to such limitless liability and would not so hold unless we were required to do so by established precedent. Indeed, because the policy implications of finding liability on the grounds suggested here would be so severe, and because the surrender of sovereign immunity by the government should be interpreted narrowly, we must subject to critical scrutiny the cases cited by the district court to support its conclusion that the Federal Aviation Act and the Southern Region's order created an actionable duty on the part of the federal government.

Under such examination we do not find the district court's authorities to be persuasive. Four of the cases cited do not involve tort liability of any kind. *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 422, 62 S.Ct. 1194, 1202, 86 L.Ed. 1563 (1942), held that regulations characterized by an agency as announcements of policy "must be taken by those entitled to rely upon them as what they purport to be—an exercise of the delegated legislative power . . .", and as such are reviewable by the Court. This is inapposite to the facts of the present case; there is no claim that any of plaintiffs' decedents relied on the Southern Region's order in any way or even knew of its existence for that matter, and the relevant issue here is liability, not reviewability.

The other three non-tort cases relate to due process standards which require agencies to abide by their own regulations or directives. *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) involves the rights of a federal employee to have the government abide by its own procedural rules in imposing sanctions on him. *Smith v. Resor*, 406 F.2d 141 (2d Cir. 1969) is similar except that it deals with the rights of an army reservist against the military as opposed to the rights of an employee. *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1970) concerns the rights of a taxpayer to have IRS agents obey their own orders and instructions while interrogating him in connection with a tax fraud investigation.[9] None of these cases have anything to do with the establishment of specific standards of care for purposes of tort liability. They only relate to the same due process duty, required of all agencies, to treat citizens uniformly and in a non-arbitrary manner.

The remaining cases cited by the district court all involve accidents resulting from the negligence of air traffic controllers. Appellees point out several additional cases in which liability was upheld in similar circumstances. There can be no doubt that federal air traffic controllers are held to a wide range of duties to the air travelling public, and that the Air Traffic Control Procedures Manual of the FAA is used by courts to determine at least part of the scope of those duties. *See, e. g., Dickens v. United States*, 545 F.2d 886 (5th Cir. 1977); *Hartz v. United States*, 387 F.2d 870 (5th Cir. 1968); *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227 (2d Cir. 1967).

---

**8.** Indeed, it is difficult to tell from the record who is responsible for the specific content of SO 8430.20C and in particular section 7d. The Chief of the Flight Standards Division of the Southern Region of the FAA testified that the basis of the order was "a Washington directive, telegraphic that generally recommended the establishment of a large aircraft surveillance program", *see* Joint Appendix p. 1084. He also testified that his staff had written the order, but that he had reviewed it. What is clear is that there is no indication that the level of authority at which the order was issued is relevant to the decision of the court below. As

long as the order was issued by some administrator with the authority to command the San Juan Flight Standards District Office staff, the reasoning of the district court's opinion would be controlling.

**9.** In *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970), we decided a case similar to *United States v. Heffner* and pointed out that agencies must be required to follow their own regulations because uniformity and reliance interests depend on such a rule. These due process interests have no bearing on the negligent failure to inspect alleged in the present case.

■■ However, while we can understand how one could generalize from the air controller's duties to the responsibilities of FAA inspectors, both history and policy establish that the differences between the two are extensive and require different legal consequences.[10] The role of control tower operators existed prior to any attempt by the federal government to regulate them. It is in the nature of that role that any person endeavoring to undertake it owes a duty to those dependent on the quality of his performance. "The *relationship* between the air controller and the pilot of a plane which is landing or taking off *creates a duty of care* on the part of the controller." *Yates v. United States*, 497 F.2d 878, 882–83 (10th Cir. 1974) [emphasis added]. Indeed, the first federal manual setting standards for control tower procedures was issued while a significant number of air control towers were not manned by federal employees. Over time Congress authorized federal agencies to maintain and operate air control towers under complete federal control. At the present time federal regulations require that "An air traffic control operator shall perform his duties in accordance with . . . the procedures and practices prescribed in air traffic control manuals of the FAA to provide for the safe, orderly, and expeditious flow of air traffic." 14 CFR 65.45(a). *See generally, Eastern Air Lines v. Union Trust Co.*, 95 U.S.App.D.C. 189, 221 F.2d 62 (1955), *aff'd sub nom., United States v. Union Trust Co.*, 350 U.S. 907, 76 S.Ct. 692, 100 L.Ed. 799 (1955), for a complete discussion of the unique history of air tower controllers in the United States and their non-federal origin.

■ Thus the duties of air tower controllers have three unique characteristics totally distinguishable from the FAA inspectors before us. First, they operate under federal rules which were clearly designed to establish standards of care for a particular role, regardless of the status of the employee (private, public, municipal or federal) fulfilling it. A federal employee is subject to whatever duty is imposed by these regulations in the same manner in which any citizen would be. The inspectors at San Juan, on the contrary, were given orders as federal employees to perform certain tasks and were bound to obey them only as employees. As such they owed a duty to those who would receive the benefit of their performance only to the extent that their superiors owed such a duty. As has been noted, the issuance of SO 8430.20C was not required by law or legal duty, it was a discretionary policy decision.

Second, the nature of the role of air tower operators involves various duties to air traffic regardless of the procedures promulgated in the manual. This is confirmed by the decisions which have found the duties of air tower controllers to extend beyond that required by the FAA manual, *see American Airlines, Inc. v. United States*, 418 F.2d 180, 193 (5th Cir. 1969); *United States v. Furumizo*, 381 F.2d 965, 968 (9th Cir. 1967); *Hartz v. United States*, 387 F.2d 870 (5th Cir. 1968); *Stork v. United States*, 430 F.2d 1104 (9th Cir. 1970); *Spaulding v. United States*, 455 F.2d 222, 226 n. 8 (9th Cir. 1975). Tort liability is intrinsic in the function; once the government took control of the air towers it became subject to the duties that would devolve on any entity that took on such responsibility. There is *no comparable duty*

10. We are aware that there is language in *Delta Air Lines v. United States*, 561 F.2d 381 (1st Cir. 1977) suggesting that the violation of federal safety procedures creates a cause of action, in particular our statement that "Our finding of controller negligence in failing to follow established mandatory procedures is grounded on the premise that the unexcused violation by a federal employee of procedures established by the Government which have as their purpose the protection of those who were in fact harmed constitutes negligence." *Id.* at 393–394. However, this statement must be understood in terms of the context in which the opinion was written, that is, the procedures governing the conduct of air tower controllers. For the reasons discussed in the text, *infra*, the duties of air controllers and the procedures that govern them are not analogous to other facets of the FAA operations or the work of other federal agencies.

related to the role of FAA inspector. The relationship between air passengers and inspectors could develop into one in which common law tort duties applied, but as yet there is no basis for assuming that particular duties, not defined by statute, apply to this role.

The third characteristic is a corollary of the second. The relationship between pilots and passengers and air controllers is imbued with reliance, a foundation stone of tort liability. One can no more imagine an air traffic controller being free from the weight of reliance interests than one can a traffic policeman at a busy intersection. Traffic safety is dependent on every action and inaction. This has been recognized directly, *see Yates v. United States*, 497 F.2d 878, 883–884 (10th Cir. 1974); *Gill v. United States*, 429 F.2d 1072 (5th Cir. 1970); *Ingham v. Eastern Airlines, Inc.*, 373 F.2d 227, 236 (2d Cir. 1967); *Allen v. United States*, 370 F.Supp. 992, 999 (E.D.Miss.1973). It is also apparent from the number of air controller liability cases citing the "Good Samaritan" doctrine beginning with *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), which held that when the government gratuitously undertakes to perform a service upon *which members of the public justifiably rely*, it will be held to an appropriate standard of care in carrying the service out. *See Spaulding v. United States*, 455 F.2d 222, 226 n. 9 (9th Cir. 1975); *Yates v. United States*, 497 F.2d 878, 884 (10th Cir. 1974); *Gill v. United States*, 429 F.2d 1072, 1074 (5th Cir. 1970); *Dickens v. United States*, 378 F.Supp. 845 (S.D.Tex.1974); *Allen v. United States*, 370 F.Supp. 992, 999 (E.D. Miss.1973).[11]

There is no indication in the present case that plaintiffs' decedents or anyone else for that matter have ever relied on the FAA to inspect a charter aircraft before they embark on a private flight. We doubt that the Supreme Court in *Indian Towing* would have found liability if the government's negligence simply amounted to failing to construct a lighthouse as ordered by a Coast Guard official when the seafaring public was unaware that such an order had been given, and the lighthouse was never operational.

■ Although there are few cases that discuss the creation of a duty directly outside of the air controller context, we believe a related line of cases is relevant. On several occasions an employee of an independent contractor working on a government project has been injured or killed in an accident and suit is brought against the United States under the Federal Tort Claims Act. An early case to discuss this issue was *Kirk v. United States*, 270 F.2d 110 (9th Cir. 1959). In *Kirk* plaintiff's decedent was killed while working on a dam project on United States property; the project required implementing plans developed by the U.S. Army Corps of Engineers. Decedent's employer, an independent construction company, was under contract with the United States government. One of the provisions of the contract required the construction company to comply with the safety standards of the Corps of Engineers' "Safety Requirements" manual, and permitted the government to halt work on the project for any lack of prompt compliance. Several other safety manuals and army regulations calling for mandatory and continuous safety programs on construction projects were introduced into evidence. Government inspectors were regularly on the site. Yet the court did not find the government to be liable because the statute under which the construction was undertaken did not "establish a duty of care on behalf of the United States toward employees of an independent contractor" nor did it

---

11. Instead of citing *Indian Towing*, several cases cite the language of *Ingham v. Eastern Airlines, supra* at 236, that "when the government undertakes to perform services, which in the absence of specific legislation would not be required, it will, nevertheless, be liable if these activities are performed negligently." *See*

*American Airlines, Inc. v. United States*, 418 F.2d 180, 192 (5th Cir. 1969); *Hartz v. United States*, 387 F.2d 870 (5th Cir. 1968). It is clear from examining that passage from *Ingham* in context that it refers to good samaritan conduct upon which the public can rely.

"authorize the creation of such duty by the Secretary of the Army or the Chief of Engineers through the issuance of regulations, manuals or directives." *Id.* at 117. Similarly, although we acknowledge that a principal purpose of the Federal Aviation Act was to promote the safety of air traffic, we are unable to take the additional step of holding that Congress intended to authorize Regional Directors to create a legal duty of care between the federal government and a particular class of passengers.[12] It may be that in carrying out internal directives over a period of time, the FAA staff's conduct will engender sufficient justifiable reliance to create an actionable duty of care, but this is fundamentally different than deriving such a duty from the mere issuance of a directive.

The general holding of *Kirk* that employees of independent contractors cannot recover from the government under the Federal Tort Claims Act on the basis of contractual obligations requiring various safety measures and the presence of government safety inspectors in the area, has been affirmed on numerous occasions. *See Fisher v. United States*, 441 F.2d 1288 (3d Cir. 1971); *Market Insurance Co. v. United States*, 415 F.2d 459 (5th Cir. 1969); *Lipka v. United States*, 369 F.2d 288 (2d Cir. 1966); *United States v. Page*, 350 F.2d 28 (10th Cir. 1965); *Blaber v. United States*, 332 F.2d 629 (2d Cir. 1964); *McGarry v. United States*, 370 F.Supp. 525 (D.Nev. 1973), *rev'd on other grounds*, 549 F.2d 587 (9th Cir. 1976). We recognize that a significant reason for the failure to find liability in these cases, and one which at first glance distinguishes them from the current case, is the belief that the primary responsibility for the safety of a contractor's employees rests with the contractor himself, not the federal government. However, federal regulations similarly make clear that "The pilot in command of a civil aircraft is responsible for determining whether that aircraft is in condition for safe flight." 14 CFR 91.29(b). *See also* 14 CFR 91.163.[13] Given this primary locus of responsibility, we do not feel that administrative directives, without more, shift the onus of potential tort liability to the federal government.

■ The cases we have just considered turned on the lack of direct statutory authority for the existence of a federal duty of care to a particular class of individuals. It should be noted that even where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability. Thus in *Davis v. United States*, 395 F.Supp. 793 (D.Neb.1975), *aff'd*, 536 F.2d 758 (8th Cir. 1976) the court dismissed a complaint alleging that an Occupational Safety and Health Administration compliance officer had negligently failed to follow up a safety violation citation which resulted in injury to the plaintiff. The court could "find no indication that any law permits Nebraska to place upon private persons the duties cast upon federal officers by OSHA. The Act's thrust is to require designated federal officers to investigate, issue citations, and apply for enforcement orders by a federal court. Nothing resembling those duties devolves on a private person under OSHA

---

**12.** Although the relevant statute in *Kirk*, 33 U.S.C. § 701(b) made no specific reference to safety, other cases in accord with the holding of *Kirk* concern Atomic Energy Commission contracts and research under 42 U.S.C. § 2051, *see Blaber v. United States*, 332 F.2d 629 (2d Cir. 1964); *McGarry v. United States*, 370 F.Supp. 525 (D.Nev.1973), *rev'd on other grounds*, 549 F.2d 587 (9th Cir. 1976). This statute specifically provides that "The arrangements made pursuant to this section shall contain such provisions (1) to protect health, (2) to minimize danger to life or property, and (3) to require the reporting and to permit the inspection of work performed thereunder, as the Commission may determine." 42 U.S.C. § 2051(d).

**13.** *Hartz v. United States*, 387 F.2d 870 (5th Cir. 1968) and *United States v. Schultetus*, 277 F.2d 322 (5th Cir. 1960) confirm that a pilot has primary responsibility for his aircraft as long as he has the necessary information to insure its safety available to him. There is no suggestion in the present case that the pilot did not know or should not be held responsible for such facts as the qualifications of his crew and the weight of his cargo.

. . . To the extent that the complaint in the case at bar is rooted in federal law as a source of duties of the United States or its compliance officer, it must fall." *Id.* at 795–96.

Similarly, in *United States v. Smith*, 324 F.2d 622, 624–625 (5th Cir. 1963), plaintiffs argued that government contracting officers, committed acts of negligence by failing to enforce the provisions of the Miller Act requiring that all those who undertake construction contracts with the United States furnish payment bonds. The court ruled that the Federal Tort Claims Act "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs." [14]

There can be no doubt that the mandate of a federal statute is a far stronger foundation for the creation of an actionable duty under the Federal Tort Claims Act than the administrative directive in the present case. The inclusion of orders in a statute not only indicates that Congress has made a definitive judgment that a particular class receive specific benefits or services, it also is far more likely to generate reliance than any internal regulation or directive. Thus the fact that courts have been reluctant to find liability despite the violation of specific federal statutory responsibilities strongly confirms our conclusion that the Southern Region's order in this case issued under the general authority of the Federal Aviation Act does not give rise to a legal obligation sufficient to support a cause of action under the Federal Tort Claims Act. [15]

We should point out that there is a fine line but a vital and necessary one between the principle of holding the government responsible for the conduct by which it carries out its affairs when federal employees negligently injure the public and the principle that the government may be turned to as a final source of relief from the tragedies of life. As the court in *Gibbs v. United States*, 251 F.Supp. 391, 400 (E.D. Tenn.1965) noted, "Having decided to enter the broad field of the regulation of the flight and repair and modifications of aircraft and licensing of pilots, the Government becomes responsible for the care with which those activities are conducted. It may no longer take refuge behind the distinction between proprietary and governmental functions. But the Government nevertheless does not become an insurer. Its liability is subject to the same requirements of negligence and causation as would affect the liability of a private person in the same circumstances."

Certainly whether the Congress should take a more active role in providing compensation for the victims of air disasters is not an appropriate question for this court to decide. Moreover, to attempt to expand the relief available to victims and their families through the Federal Tort Claims Act in circumstances similar to those of this case would, we believe, have an unfortunate inhibiting effect on government safety measures. The end result of attaching liability to government attempts at all levels to supplement the safety precautions of private individuals and businesses, even when there is no reliance on the government's assistance, is far more likely

---

**14.** *Somerset Seafood Co. v. United States*, 193 F.2d 631 (2d Cir. 1951) suggests that the United States is bound by federal statutory duties for the purposes of the Federal Tort Claims Act. However, in that case the government negligently performed services (the marking of a shipwreck) on which seagoing ships relied to their detriment. This would have been a sufficient ground for liability without the statutory duty. Moreover, the government was taking over a duty previously required of the ship owner. As such it would be anomalous if the very act of replacing a duty on a private party

with a duty on the government negated the rights of those whom the duty was designed to benefit. In contrast the safety responsibilities of the pilot and crew here were certainly not diminished by the issuance of SO 8430.20C.

**15.** Because we find that plaintiffs have not established a cause of action under the Federal Tort Claims Act we need not address the further issue argued by the government that the conduct of the FAA and its inspectors is covered by the discretionary function exemption of the Tort Claims Act, 28 U.S.C. § 2680(a).

to increase the reluctance of the government to involve itself in such matters than it is to install a higher quality of performance in the federal employees assigned to carry such functions out. We do not believe that the expanded role of the federal government in the safety area through such legislation as OSHA indicates an intent of Congress to make the United States a joint insurer of all activity subject to inspection under that statute or others. Nor do we believe that there is any sound policy basis for requiring that government attempts to protect the public must be accompanied by per se tort liability if they are unsuccessfully carried out.

■ The passengers on this ill fated flight were acting for the highest of humanitarian motives at the time of the tragic crash. It would certainly be appropriate for a society to honor such conduct by taking those measures necessary to see to it that the families of the victims are adequately provided for in the future. However, making those kinds of decisions is beyond the scope of judicial power and authority. We are bound to apply the law and that duty requires the reversal of the district court's judgment in favor of the plaintiffs.