Harald O. KNUDSEN and Katherine M. Knudsen, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 77 Civ. 3801 (WCC).

United States District Court, S. D. New York.

Oct. 2, 1980.

Jack Steinman, New York City, for plaintiffs.

John S. Martin, Jr., U. S. Atty. for the Southern District of New York, New York City, for the United States of America; Richard N. Papper, Asst. U. S. Atty., New York City, James M. Barron, Federal Aviation Administration, Washington, D. C., of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This action is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq. The amended complaint alleges that while plaintiff Harald O. Knudsen ("Knudsen") was operating a Britten–Norman Islander BN–2A–6 aircraft at the Puerto Rico International Airport on October 20, 1974, he sustained injuries which resulted in the loss of his left hand. Plaintiffs contend that the United States Government, by and through the Federal Aviation Administration ("FAA"), negligently issued a certificate of airworthiness and a type certificate for the aircraft in question and, shortly prior to October 20, 1974, negligently inspected the aircraft in Puerto Rico. Plaintiffs further assert that the subject aircraft was not in fact airworthy, but was dangerous, defective and ill–designed in that the propellers were positioned so as to constitute a hazard to plaintiff Knudsen, and that the left front door and its appurtenances were not in good operating condition. Knudsen claims damages for pain and suffering, lost income and medical expenses. Plaintiff Katherine Knudsen contends that the injury to her husband resulted in a loss to her of Knudsen's marital services and consortium and has caused her emotional suffering.

The Government has moved for summary judgment on two grounds: first, that plaintiffs' claims are barred by the misrepresentation exception of 28 U.S.C. § 2680(h); and secondly, that the claims are precluded by the exception to the FTCA's waiver of sovereign immunity in 28 U.S.C. § 2680(k) for tort claims arising in a foreign country. This Court previously reserved decision on the misrepresentation exception and held that defendant's motion for summary judgment on the Section 2680(k) issue was denied without prejudice to its renewal upon submission of affidavits further detailing the inspections actually performed on the aircraft in Puerto Rico.

### I. Issuance of Certificates and Inspection of Design

In support of its renewed motion, defendant has submitted affidavits which state that the aircraft in the case at bar was imported into the United States with a Certificate of Airworthiness for Export signed by a representative of the Board of Trade of the United Kingdom, and a type certificate that had been issued in accordance with 14 C.F.R. § 21.29.

### A. Documentation Certification Procedures

#### 1. Airworthiness Certificate

Affidavits submitted by defendant explain that, under standards applicable to this case, a United States Standard Airworthiness Certificate could be issued on the basis of a United Kingdom Certificate of Airworthiness for Export signed by a representative of the United Kingdom Board of Trade if such Certificate for Export contained the statement that the aircraft had been examined in Britain and found to comply with the applicable United States–British certification convention, FAR Part 23,[1] and conformed to the applicable type certificate as to safety of design, Type Certificate Data Sheet No. A17EU.

The procedures applicable on June 1, 1971 for the original issuance of a United States Standard Airworthiness Certificate for an

---

1. United States–United Kingdom reciprocal bilateral airworthiness agreement contained in a note dated September 17, 1934 from United States Secretary of State Cordell Hull to Sir Ronald Lindsay, British Ambassador. For current version of this Treaty, see 23 U.S.T. 4309.

aircraft are outlined in 14 C.F.R. 21.183(c), which states that an applicant is entitled to such certificate if the country in which the aircraft was manufactured certifies, and the FAA finds, that the aircraft conforms to the type design and is in condition for safe operation. These procedures are amplified in Paragraph 22 of FAA Order 8130.2A, dated May 23, 1969, as revised, which requires that the foreign manufactured aircraft must have been tested for design defects in the country in which the aircraft was manufactured and bear such current certification from that country as would indicate that the aircraft conforms to the type design and is in condition for safe operation.

## 2. Type Certificate

14 C.F.R. 21.29 states that a United States type certificate may be issued for a product manufactured in a foreign country with which the United States has an agreement for acceptance of such products if: (1) the country in which the product was manufactured certifies that the product has been examined and tested in that country and found to meet applicable aircraft noise requirements and applicable airworthiness requirements for the United States, as detailed in 14 C.F.R. § 21.17, or of the country in which the product was manufactured; (2) the applicant submits the technical data to the FAA concerning aircraft noise and airworthiness; and (3) manuals, placards, listings and instrument markings required by applicable airworthiness requirements are in the English language.

## B. *Physical Inspection of the Aircraft*

FAA Order 8130.2A further directs that an eligible aircraft should be inspected in the United States prior to issuance of a United States Standard Airworthiness Certificate to determine: (1) that all required items are installed; (2) that instruments, instrument markings, data plate and placards are as required; (3) that all equipment is listed on a list appropriate for the aircraft; (4) that all systems have been checked for proper operation, including the engine and propellers; and (5) that all FAA mandatory charges have been complied with. A crucial element of this FAA order states that a further searching inspection, unless deemed "absolutely essential" because of circumstances in an individual case, would be in conflict with the applicable United States–foreign government bilateral airworthiness agreement, since, under these agreements, the foreign certification is accepted by the FAA as evidence that at the time the certificate was issued the aircraft conformed to the type design and was in condition for safe operation. Thus, no additional inspection of the design safety or of the operation of the aircraft in the United States is required, absent unusual circumstances.

## C. *Inspection of Subject Aircraft*

Accordingly, defendant's affidavits state, the application for an airworthiness certificate in the United States for the aircraft in this case was based on the United Kingdom–issued Certificate of Airworthiness for Export and the type certificate which had been issued on the basis of tests conducted in Belgium and Great Britain. The standards under which the FAA was operating at the time it issued the United States airworthiness certificate for Knudsen's plane included the requirement that the FAA agent issuing the United States type certificate recognize the aircraft's type certificate, based on tests and inspections conducted abroad, as conclusive evidence that the aircraft satisfied the statutory requirements of 49 U.S.C. § 1423(a).[2] As to the

---

**2.** 49 U.S.C. § 1423 provides in relevant part: "(a)(1) The Administrator is empowered to issue type certificates for aircraft, aircraft engines, and propellers; to specify in regulations the appliances for which the issuance of type certificates is reasonably required in the interest of safety; and to issue such certificates for appliances so specified.
"(2) Any interested person may file with the Administrator an application for a type certificate for an aircraft, ... The Administrator shall make, or require the applicant to make, such tests during manufacture and upon com-

Standard Airworthiness Certificate, defendant's affidavits show that the FAA inspector in Puerto Rico followed the directives of FAA Order 8130.2A Paragraph 22, and viewed the British certification for airworthiness and the type certificate data sheet, containing information about the foreign design testing, as indicating that the subject aircraft conformed to the type design approved by the FAA and was certified as airworthy in accordance with applicable British Civil Airworthiness Requirements and noted special requirements of the United States. He thus considered these factors as conclusive evidence that the aircraft met the requirements for United States airworthiness certification. Defendant's affidavits further indicate that the inspector performed the additional physical inspections (none of which were design–related) required by FAA Order 8130.2A and that none of these inspections indicated any need for additional inspection in the United States of the design safety or airworthiness of the aircraft.

### D. *Legal Standard: FTCA*

 As this Court ruled in its previous opinion, a tort claim arises under the FTCA where the negligence had its "operative effect." 28 U.S.C. § 1326(b); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Roberts v. United States*, 498 F.2d 520, 522 n.2 (9th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *Manemann v. United States*, 381 F.2d 704 (10th Cir. 1967); *In re Paris Air Crash of March 3, 1974*, 399 F.Supp. 732, 737 (C.D.Cal.1975). If every negligent act proximately causing damage occurs outside the United States, Section 2680(k) bars assertion of a claim against the Government even if the accident or loss occurs inside the United States. *Manemann, supra.* However, where an issue of fact exists with respect to whether negligent acts proximately causing damage occurred both in the United States and in a foreign country, summary judgment may not be granted under Section 2680(k). *Leaf v. United States*, 588 F.2d 733 (9th Cir. 1978).

### E. *Discussion*

 Here, defendant has come forward with affidavits showing that any act with respect to the inspection of the design of the aircraft occurred abroad. Plaintiffs have not come forward with any affidavits or documentary submissions disputing defendant's factual assertions as to type certification and design inspections actually performed. Nor have plaintiffs come forward with any basis to support an argument that, in the case of this aircraft, circumstances existed which made further inspection of the design of the aircraft in the United States "absolutely essential" to the proper issuance of an airworthiness certificate within the meaning of Paragraph 22 of the FAA order. Thus, there appears to be no issue of material fact as to the inspection of the design of the aircraft. Plaintiffs have failed to meet their burden under F.R. Civ.P. 56(e) of controverting defendant's factual submissions and have presented no basis for an order directing that further discovery be conducted under F.R.Civ.P. 56(f). Moreover, given the facts as presented, the claim for recovery due to negligent certifications and inspection of the aircraft design is barred as a matter of law by Section 2680(k). Accordingly, defendant's motion for summary judgment on this aspect of plaintiffs' claim is granted.

pletion as the Administrator deems reasonably necessary in the interest of safety, including flight tests and tests of raw materials or any part or appurtenance of such aircraft, aircraft engine, propeller, or appliance. If the Administrator finds that such aircraft, aircraft engine, propeller, or appliance is of proper design, material specification, construction, and performance for safe operation, and meets the minimum standards, rules, and regulations prescribed by the Administrator, he shall issue a type certificate therefor. . .

"(c) The registered owner of any aircraft may file with the Administrator an application for an airworthiness certificate for such aircraft. If the Administrator finds that the aircraft conforms to the type certificate therefor, and, after inspection, that the aircraft is in condition for safe operation, he shall issue an airworthiness certificate. . . . "

## II. *Other Negligent Inspections*

In addition to their allegations as to defective inspection of the design and the certifications of the aircraft, plaintiffs also contend that the FAA negligently performed a safety inspection of the aircraft in Puerto Rico on October 18, 1974 and failed to disclose the unsafe condition of the left front door. This claim, however, fails on two grounds.

### A. *Legal Standard Governing Aircraft Inspections under the FTCA*

■ First, plaintiffs' allegations do not meet the legal standard for a claim under the FTCA established in *Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). Under *Clemente, supra*, a prerequisite for recovery under the FTCA is that there be a "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The critical issues presented in *Clemente*, as in this aspect of plaintiffs' case, are whether an FAA inspector in Puerto Rico has a prior duty to inspect an aircraft for operational safety and to warn an aircraft's passengers or crew of any irregularities; or, if no such duty is present, whether the FAA inspector has engaged in any other conduct giving rise to liability to an airplane's passengers.

As to prior duty to inspect or warn, the *Clemente* court ruled that although one of the purposes of Congress in establishing the FAA was to promote air travel safety, the Federal Aviation Act does not create a legal duty on the part of the FAA to provide any class of passengers with particular protective measures. In addition, the *Clemente* court ruled, the FAA is not liable for negligent inspection by virtue of its issuance of administrative orders requiring inspections of aircraft. While the Federal Aviation Act empowers the administrative staff of the FAA to issue such orders to its employees, as was done with regard to the inspections in *Clemente* and in the case at bar, the *Clemente* court held that the Act itself does not require this conduct, and the agency, in issuing the order, "was acting entirely gratuitously and was under no obligation or duty to plaintiffs' decedents or any other passengers." *Clemente, supra* at 1144.

Moreover, the *Clemente* court found that under the circumstances of that case, no other grounds for liability existed: there was no evidence that the FAA's failure to inspect added to the risk of injury to the passengers or crew, nor that any passenger or crew member failed to take safety precautions in reliance on the actual FAA inspections or the FAA administrative order requiring such inspection. *Clemente, supra* at 1145. Thus, the court ruled that there was no basis for tort liability under the Restatement of Torts 2d §§ 323 and 324A for the allegedly negligent FAA safety inspection and the FAA failure to warn occupants of the aircraft of certain dangerous aircraft conditions.[3]

### B. *Clemente Applied to this Action*

■ In the case at bar, as in *Clemente*, the FAA has no underlying statutory duty to protect plaintiff or his wife; the orders by the FAA concerning inspections or certifications are an exercise of discretion by the supervisory or administrative staff of the

---

**3.** The Ninth Circuit has recently taken a stand along the lines of the *Clemente* rationale when it held that, in the absence of proof that state law requirements of the good samaritan doctrine were satisfied, the Government could not be held liable for negligence in the inspection of an aircraft. *United Scottish Ins. Co. v. United States*, 614 F.2d 188 (9th Cir. 1979). The court in that case reiterated the distinction emphasized in *Clemente* between FAA air traffic controller cases, in which the inherent and ongoing reliance by pilots satisfies the good samaritan test, and those cases involving FAA air safety inspectors. This rationale also distinguishes the present case from the ruling in *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967), which held there was liability on the Government's part due to the negligence of an FAA air traffic controller.

FAA, creating no governmental liability to the beneficiaries of that order if not carried out. *Clemente, supra* at 1146. As courts have explained, the federal Government does not become a joint insurer of all activity subject to inspection. *Clemente, supra* at 1149–1151; *Gibbs v. United States*, 251 F.Supp. 391 (E.D.Tenn.1965). To hold otherwise would expose the Government to limitless liability, while the surrender of sovereign immunity under the FTCA is a limited, specific waiver of that immunity. *Clemente, supra* at 1146; *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Lambertston v. United States*, 528 F.2d 441 (2d Cir. 1976), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976); *Gardner v. United States*, 446 F.2d 1195 (2d Cir. 1971), *cert. denied*, 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1972).

As to the second basis for liability suggested in *Clemente, i. e.*, Government action increasing the risk of harm to plaintiff, plaintiffs have not, in the face of the Government affidavits detailing the inspections performed in Puerto Rico, indicated how any FAA negligence other than the alleged failure to discover the design defect added to the risk of injury to plaintiff Knudsen in reaching to close what he thought was an improperly locked door. A claim based on the design defect alone is, as discussed above, barred by Section 2680(k).

As to the third basis for an FTCA claim suggested in *Clemente*, reliance on the Government's acts, plaintiffs have not alleged that Knudsen relied on the FAA inspection in Puerto Rico in deciding to close the door and extend his arm and hand in the path of the rotating propeller blade, or proffered any factual assertions indicating either that such reliance occurred or that any reliance which did occur was reasonable.

### C. *Misrepresentation Exception*

■ Alternatively, even if plaintiffs' allegations were found to state a claim under the FTCA and *Clemente*, any claim by plaintiffs based on negligent inspection in the United States appears barred by the misrepresentation exception of Section 2680(h). Although this aspect of plaintiffs' cause of action is couched in the language of negligence, it is in effect a claim for negligent misrepresentation by the FAA that the aircraft was safe to operate. The United States has not waived sovereign immunity as to such a claim. In *United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 1298, 6 L.Ed.2d 614 (1961), the Supreme Court indicated that, "[S]ince Congress employed both the terms 'misrepresentation' and 'deceit' in § 2680(h), it clearly meant to exclude claims arising out of negligent, as well as deliberate, misrepresentation." This rationale has been extended to cover cases in which a plaintiff alleges that the FAA's negligent issuance or renewal of an airworthiness certificate following allegedly improper inspection caused harm to plaintiff, or that plaintiff relied on FAA inspection and certification of an aircraft to his detriment. See, *Summers v. United States*, 480 F.Supp. 347 (D.Md.1979); *Lloyd v. Cessna Aircraft Co.*, 429 F.Supp. 181 (E.D.Tenn.1977); *Marival, Inc. v. Planes, Inc.*, 306 F.Supp. 855 (N.D.Ga.1969). As the *Lloyd* court explained the exception, the Government has not waived sovereign immunity for claims based on FAA misstatements as to an aircraft's safety following FAA inspection; but would waive sovereign immunity in cases where a plaintiff alleged that the FAA inspection as conducted actually caused damage leading to a plaintiff's injury, *i. e.*, by physically or structurally damaging the plane itself in the course of examining it for safety. *Id.* at 187.

Here, as noted above, plaintiffs' allegations rest entirely on the FAA's allegedly negligent failure to discover and report to plaintiff Knudsen certain operational defects in the aircraft, allegations which fall squarely within the holdings of *Summers, Lloyd* and *Marival, supra*, as claims based on negligent misrepresentation—what the FAA told or failed to tell plaintiff—rather than on an actual negligent act.

*Summary*

Thus, plaintiffs' allegations fall within the exception to liability of Section 2680(k) with respect to any design defect; with respect to other defects, the allegations fail to state a cause of action under *Clemente* ; and in addition, any claim based on inspection in the United States is barred by the misrepresentation exception of Section 2680(h). Defendant's motion is granted as well as to this aspect of plaintiffs' claim.

The complaint is accordingly dismissed.

SO ORDERED.