795 F.2d 301
 55 USLW 2049
 Marshall A. SMITH, et al.
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Defendant-Third Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
and
HOOKER CHEMICALS & PLASTICS CORPORATION, Defendant and
Third-Party Plaintiff,
v.
RAYBESTOS MANHATTAN, INC.
and
BELL ASBESTOS MINES, LTD., Defendant and Third Party Plaintiff,
v.
RAYBESTOS-MANHATTAN, INC., et al., Third-Party Defendants.
Michael CEISWICH, et al.
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Defendant-Third Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al.
and
BELL ASBESTOS MINES, LTD., Defendant and Third-Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
RAYBESTOS-MANHATTAN, INC., Defendant-Third Party Plaintiff,
v.
ADVOCATE MINES, LTD., et al., Third-Party Defendants.
Joseph ARDIN and Rose Ardin, his wife, et al.
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Defendant-Third Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
and
BELL ASBESTOS MINES, LTD., Defendant and Third-Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third Party Defendants.
RAYBESTOS-MANHATTAN, INC., Defendant-Third Party Plaintiff,
v.
ADVOCATE MINES, LTD., et al., Third-Party Defendants.
Betty P. ESPOSITO, Individually and as Executrix of the
Estate of Robert I. Esposito, deceased
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Defendant-Third Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
and
BELL ASBESTOS MINES, LTD., Defendant and Third-Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
RAYBESTOS-MANHATTAN, INC., Defendant-Third Party Plaintiff,
v.
ADVOCATE MINES, LTD., et al., Third-Party Defendants.
Watts CHERNESKY and Mary Chernesky, his wife, et al.
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Defendant-Third Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
and
BELL ASBESTOS MINES, LTD., Defendant and Third-Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
RAYBESTOS-MANHATTAN, INC., Defendant-Third Party Plaintiff,
v.
ADVOCATE MINES, LTD., et al., Third-Party Defendants.
KARPINECZ, Thomas, Sr. and Filomena Karpinecz, his wife
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Defendant-Third Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
and
BELL ASBESTOS MINES, LTD., Defendant and Third-Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
RAYBESTOS-MANHATTAN, INC., Defendant-Third Party Plaintiff,
v.
ADVOCATE MINES, LTD., et al., Third-Party Defendants.
Calvin RANDOLPH and Joyce Randolph, his wife, et al.
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Raybestos-Manhattan,
Inc.; and Bell Asbestos Mines, Ltd.,
Defendants-Third Party Plaintiffs,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
RAYBESTOS-MANHATTAN, INC., Defendant-Third Party Plaintiff,
v.
ADVOCATE MINES, LTD., et al., Third-Party Defendants.
Edward Sherman LOWER; William J. Kenvin and Dorothy D.
Kenvin, his wife
v.
JOHNS-MANVILLE CORPORATION, et al.
HOOKER CHEMICALS & PLASTICS CORP., Raybestos-Manhattan,
Inc.; and Bell Asbestos Mines, Ltd.,
Defendants-Third Party Plaintiff,
v.
LAKE ASBESTOS OF QUEBEC, LTD., et al., Third-Party Defendants.
RAYBESTOS-MANHATTAN, INC., Defendant-Third Party Plaintiff,
v.
ADVOCATE MINES, LTD., et al., Third-Party Defendants.
Appeal of UNITED STATES of America.
 No. 85-5538.
 United States Court of Appeals, Third Circuit.
 Argued April 14, 1986.
 Reargued June 3, 1986.
Decided July 3, 1986.
 
 Scott D. Austin, Trial Atty. (argued), Richard K. Willard, Acting Asst. Atty. Gen., Thomas W. Greelish, U.S. Atty., Harold J. Engel, Acting Director, Torts Branch, Mary Catherine Cuff, Chief Civil Div., Joseph B. Cox, Jr., Asst. Director, Torts Branch, U.S. Dept. of Justice, Washington, D.C., for appellant.
 Michael S. Giannotto (argued), David Booth Beers, Shea & Gardner, Washington, D.C., Joseph P. LaSala, Joseph F. Lagrotteria, Robinson, Wayne, Levin, Riccio, & La Sala, Newark, N.J., for appellee Brinco Mining Ltd. now Cassiar Mining Corp.
 Alexander P. Waugh, Jr. (Argued), William J. Brennan, III, Robert D. Gilbert, Smith, Stratton, Wise, Heher & Brennan, Princeton, N.J., for appellee Bell Asbestos Mines, Ltd.
 Peter W. Sachs, Sachs & Sachs, Holmdel, N.J., for appellee Hollingsworth & Vose Co.
 Kathleen F. Moran, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, Livingston, N.J., for appellee, Raymark Industries.
 Before SEITZ, HIGGINBOTHAM and BECKER, Circuit Judges.
 
 
 1
 Before HUNTER, HIGGINBOTHAM, and BECKER, Circuit Judges*.
 
 OPINION OF THE COURT
 JAMES HUNTER, III Circuit Judge:
 
 2
 This case requires us to decide whether the General Service Administration's decision to sell surplus asbestos "as is," without warnings or warranties, falls within the discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Sec. 2680(a) (1982). Jurisdiction before the district court was based on the FTCA, 28 U.S.C. Secs. 1346(b), 2671-80 (1982). Appellate jurisdiction is proper under 28 U.S.C. Sec. 1292(b) (1982). The district court determined that the government could be held liable for the asbestos sales under the FTCA. Because we conclude that the discretionary function exception protects the government's conduct, we will reverse.
 
 I.
 
 3
 These consolidated cases were originally filed by approximately eighty present or former employees of the Manville, New Jersey, plant of the Johns-Manville Corporation. Plaintiffs alleged that they or their decedents had suffered injuries as a result of exposure to asbestos products supplied by defendants, including defendants Bell Asbestos Mines, Ltd. and Cassiar Mining Corporation.[1] Certain defendants filed cross-claims and third-party claims against the United States for indemnity and contribution on the grounds that the government also had supplied asbestos to the Johns-Manville plant.
 
 
 4
 In December 1982, the government moved for dismissal of the third-party claims. The government argued that the General Service Administration's failure to place warnings on the asbestos was conduct protected from tort liability under the FTCA's discretionary function exception. The magistrate who heard the motion concluded that the exception did not apply, and recommended that the district court deny the government's motion entirely. In July 1984, the district court determined that the facts of the case would not support the asbestos companies' claims for indemnification, and accordingly granted the government's motion with regard to that theory. The court agreed with the magistrate's report that the exception was inapplicable, however, and denied the government's motion to dismiss the third-party claims for contribution.
 
 
 5
 In reaching its decision, the court noted that the record failed to reveal specific congressional directions to sell the asbestos without warnings. The court also found that the government did not affirmatively make a policy decision concerning warning labels. From these findings, the court reasoned that the decision not to warn was not the type of conduct Congress intended to protect from tort claims by the discretionary function exception, because "to the extent an exercise of discretion entered the decision to warn, it was not that of a governmental policy maker, but merely that of a commercial supplier."
 
 
 6
 In January 1985, the government moved for reconsideration of its motion in the wake of our decision in General Public Utilities Corp. v. United States, 745 F.2d 239 (3d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985), the first Third Circuit case interpreting the Supreme Court's construction of the discretionary function exception in United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) ("Varig Airlines"). The court denied the motion for reconsideration, but granted the government's alternative motion for certification as an interlocutory order under 28 U.S.C. Sec. 1292(b). We granted the government's motion for certification on August 7, 1985.[2]
 
 
 7
 The facts in this case are undisputed. Between 1966 and 1975, the United States supplied surplus asbestos to the Manville facility from government strategic material stockpiles. The General Services Administration ("GSA") managed the disposal program pursuant to the Strategic and Critical Materials Stock Piling Act ("Stock Piling Act"), 50 U.S.C. Sec. 98-98h-1 (1976).[3] Section 98b(e) of the Stock Piling Act governs the disposal of surplus strategic materials, and provides, in part:
 
 
 8
 Sec. 98b. Purchase, storage, refinement, rotation, and disposal of materials
 
 
 9
 The Administrator of General Services shall--
 
 
 10
 ....
 
 
 11
 (e) dispose of any materials held pursuant to this subchapter which are no longer needed because of any revised determination made pursuant to section 98a of this title, as hereinafter provided. No such disposition shall be made until six months after publication in the Federal Register and transmission of a notice of the proposed disposition to Congress.... Such notice shall state the reasons for such revised determination [of the necessary amount of strategic materials], the amounts of the materials proposed to be released, the plan of disposition proposed to be followed, and the date upon which the material is to become available for sale or transfer. The plan and date of disposition shall be fixed with due regard to the protection of the United States against avoidable loss on the sale or transfer of material to be released and the protection of producers, processors, and consumers against avoidable disruption of their usual markets....
 
 
 12
 50 U.S.C. Sec. 98b(e) (1976) (emphasis added). Between 1966 and 1975, Congress passed at least four laws authorizing the GSA to sell stock-piled asbestos. Each reiterated the Act's direction to minimize "avoidable loss."[4]
 
 
 13
 The record reveals that GSA sold the asbestos in the following manner. GSA solicited invitations for bids for the asbestos "as is" in the original packaging. The bidders then would take delivery of the asbestos at the government's storage location. The contracts provided that the bidders would furnish the shipping.[5] The government argued before the district court that the GSA adopted this method of sale in an effort to minimize the costs of the sale to the government, as GSA believed the Stock Piling Act required. In support of this contention, the government submitted an affidavit of John G. Harlan, Jr., who supervised the strategic materials disposal program from 1958 to 1966 as the Deputy Commissioner of the Defense Materials Service, and from 1966 to 1969 as the Commissioner of the Defense Materials Service.[6] Harlan's affidavit, portions of which are set out in the margin, detailed the manner in which an asbestos sale would proceed.[7]
 
 
 14
 Our standard of review over the district court's order is plenary. Although this case involves the denial of the government's motion to dismiss for lack of jurisdiction,[8] the appropriate standard is the same as that for a motion of summary judgment because the court below considered documents outside the pleadings themselves in ruling on the motion. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir.), cert. denied, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980).
 
 II.
 
 15
 The FTCA effects a waiver of the United States' sovereign immunity by permitting suits for compensatory damages for personal injury resulting from the conduct of a government employee acting within the scope of his employment. This waiver is subject to a number of exceptions, however. Pertinent to the instant appeal is the FTCA's discretionary function exception, which provides that the FTCA does not apply to
 
 
 16
 any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such a statute or regulation be valid, or based upon the exercise or performance of a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused.
 
 
 17
 28 U.S.C. Sec. 2680(a).
 
 
 18
 In its most recent discussion of the exception, the Supreme Court admonished courts to look to two factors in determining whether the exception applies: (i) whether the government employee's acts are the type of conduct that Congress intended to shield from tort liability through the exception; and (ii) if the challenged conduct involves the government acting in its capacity as a regulator of individual conduct, the exception presumptively applies. See Varig Airlines, 467 U.S. at 813-14, 104 S.Ct. at 2765; Merklin v. United States, 788 F.2d 172, 174 (3d Cir.1986). See generally General Public Utilities Corp., 745 F.2d at 242-46. The Varig Airlines Court emphasized that Congress enacted the exception "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." 467 U.S. at 814, 104 S.Ct. at 2765. The second factor is not involved here. The issue, therefore, is whether the GSA's decision not to label the surplus asbestos with warnings prior to sale is the type of conduct that Congress sought to shield from judicial review.[9]
 
 
 19
 We find the Supreme Court's first decision concerning the discretionary function exception, Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), particularly helpful in making this determination. Plaintiffs in Dalehite brought suit against the United States seeking damages for injuries sustained when two ships loaded with fertilizer exploded. The government had engaged the ships pursuant to a federal assistance program to transport the fertilizer to countries whose economies had been damaged by World War II. The fertilizer contained ammonium nitrate, an oxidizing agent used in the production of explosives; indeed, some of the fertilizer had been produced by recently-converted ordnance plants. Plaintiffs alleged, inter alia, that the government had been negligent in failing to include labels on the fertilizer packages warning of their explosive propensities.
 
 
 20
 In holding that the discretionary function exception barred the action, the Supreme Court examined the FTCA's legislative history. Writing for the Court, Justice Reed observed that Congress added the exception to ensure that suits brought against the United States would be restricted to the "ordinary common law torts ... [such as] 'negligence in the operation of vehicles.' " Dalehite, 346 U.S. at 28, 73 S.Ct. at 964. In particular, Congress intended the exception to protect the government from suits stemming from "an authorized activity, such as a flood-control or irrigation project." Id. at 30, 73 S.Ct. at 965. The exception shields from tort liability "the discretion of the executive or the administrator to act according to one's judgment of the best course.... It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion." Id. at 34-36, 73 S.Ct. at 967-68 (footnote omitted).
 
 
 21
 We are convinced that the exception applies in the instant case. Congress did not specify in the Stock Piling Act what factors should be considered in minimizing "avoidable costs" to the government, but instead entrusted the management of the asbestos disposals to the GSA's discretion. The GSA's choice of the particular terms of sale is similar to the "how and when" decision to flood land made by an administrator in a federal water project. See Dalehite, 346 U.S. at 36, nn. 31-32, 73 S.Ct. at 965-66 nn. 31-32. We believe that the GSA's choice of the "as is" term plainly evidences a decision in which there was room for discretion.[10] The failure to label stock-piled strategic materials disposed of pursuant to a Congressional mandate to avoid market disturbances and to maximize the government's revenues from the sales is not the type of common law tort for which Congress waived sovereign immunity.[11] Obviously, the failure to label was part and parcel of the GSA's decision to sell "as is," and therefore is shielded from liability.
 
 
 22
 Our conclusion today is in line with two of the three published decisions involving the government's asbestos disposal program. See In re All Maine Asbestos Litigation, 581 F.Supp. 963 (D.Me.1984) (discretionary function exception applies); Stewart v. United States, 486 F.Supp. 178 (C.D.Ill.1980) (same); but see Barlieb v. Turner & Newall Ltd., 588 F.Supp. 473 (E.D.Pa.1980).[12] The court below, however, concluded that the exception did not apply because the government failed to produce evidence showing that the GSA considered the health risks of asbestos in formulating its plan of sale. According to the district court, the lack of such evidence and the minimal cost of warning labels indicated that the decision not to warn was not a decision "involving considerations of public policy, calling for a balance of such factors as cost of government programs against the potential benefit," quoting Griffin v. United States, 500 F.2d 1059, 1064 (3d Cir.1974), and therefore was not covered by the exception. Under the district court's view of the exception, only those component judgments in the asbestos disposal program that balance social, political, or economic factors are entitled to protection from suit.
 
 
 23
 This view is essentially the position appellees Bell and Cassiar urge us to adopt. According to appellees, the proper analysis requires isolating the decision to warn from the context of the strategic materials disposal program. Once identified, the component decision should be evaluated to determine if the government actually balanced policy considerations in making the decision. We disagree. The position that agency decisions can be broken down into component parts is fundamentally at odds with the Court's teaching in Dalehite that the exception bars suits challenging administrators' decisions initiating programs and establishing plans in accordance with official directions. Dalehite, 346 U.S. at 36, 73 S.Ct. at 968. The test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion.
 
 
 24
 Moreover, we recently warned that our Griffin opinion must be read cautiously in light of the Supreme Court's Varig Airlines decision. See General Public Utilities Corp., 745 F.2d at 246 & n. 8.[13] Varig Airlines stressed Congress's intention that the discretionary function exception prevent judicial second guessing of agency conduct in performance of a statutory mandate. The district court's decision to compartmentalize the decisional components of the GSA's asbestos disposal program is patently inconsistent with this direction.
 
 
 25
 We find further support for our holding when we compare the appellees' position with the dissent's in Dalehite. In his dissent, Justice Jackson argued that the discretionary function exception applies to policy decisions made at the highest levels of a federal program. Once these "high altitude" policy decisions were made, however, Justice Jackson contended that the individual decisions necessary for the implementation of an official program should be tested under the tort law, for when "[t]he Government [acts] as landowner, as manufacturer, as shipper, as warehouseman ... there is no good reason ... to immunize the Government or its officers from responsibility for their acts...." Dalehite, 346 U.S. at 60, 73 S.Ct. at 980. Despite his eloquent dissent, the Dalehite Court rejected Justice Jackson's view that the exception applied only to "governmental" activities. Appellees here attempt to hold the government liable under the theory that when the government supplies a commodity, it should be liable as any other commercial supplier would be in negligently failing to warn of the commodity's risks. That route is foreclosed by Dalehite, however, because the government's conduct resulted from the implementation of the mandate to minimize costs to the government in the sale, a mandate that left the terms of sale to the GSA's discretion.[14]
 
 III.
 
 26
 To summarize, we hold that the district court erred by misconstruing the discretionary function exception. Accordingly, we will remand the case with directions to grant the government's motion to dismiss.[15]
 
 
 
 *
 After the April 14 argument, Judge Seitz was recused. Chief Judge Aldisert reconstituted the panel for the June 3 argument
 
 
 [1]
 Cassiar conducted business under the name Brinco Mining, Ltd. until September 24, 1985
 
 
 [2]
 We certified the following question for appeal: "Does the General Service Administration's decision to dispose of surplus asbestos 'as is' without warnings or warranties fall within the discretionary function exception, 28 U.S.C. Sec. 2680(a), of the Federal Tort Claims Act?" Although we discuss only the government's failure to warn, our analysis and holding apply with equal force to the government's decision not to include warranties
 
 
 [3]
 Congress repealed the Stock Piling Act in 1979 and replaced it with the Strategic and Critical Materials Stock Piling Revision Act of 1979, 50 U.S.C. Secs. 98-98h-4 (1982)
 
 
 [4]
 See Pub.L.No. 92-104, 85 Stat. 328 (1971); Pub.L.No. 91-329, 84 Stat. 425 (1970); Pub.L.No. 89-463, 80 Stat. 213 (1966); Pub.L.No. 89-420, 80 Stat. 138 (1966). Each act provided: "[t]hat the time and method of disposition shall be fixed with due regard to the protection of the United States against avoidable loss and the protection of producers, processors, and consumers against avoidable disruption of their usual markets." (emphasis added)
 
 
 [5]
 Two contracts required the government to supply the asbestos F.O.B. railroad cars
 
 
 [6]
 In 1966, the Defense Materials Service was reorganized as the Property Management and Disposal Service. For the purposes of this opinion, we will refer to the two entities as the Defense Materials Service
 
 
 [7]
 Commissioner Harlan stated that:
 The OEP [Office of Emergency Planning of the Executive Office of the President] would, by letter, request the GSA to prepare a proposed long-range disposal plan for the release of quantities of asbestos determined to be excess to stockpile objectives.
 As a result of this request, a Disposal Plan would be formulated by my office....
 GSA then received OEP authorization to release the designated tonnage of asbestos
 ....
 A draft bill to authorize the disposal of asbestos was then forwarded to the Speaker of the House of Representatives. GSA therein represented to Congress that enactment of the bill should not require expenditure of additional federal funds....
 I testified many times on behalf of GSA in support of disposal bills, representing that enactment would not require expenditure of additional federal funds.
 These representations were made and repeated because the Stock Piling Act requires that such dispositions shall be fixed with "due regard to the protection of the United States against avoidable loss." Since strategic materials are often acquired in times of scarcity, when prices are high, and, after storage in great quantity for long periods of time, become surplus in times of plenty, when prices are low, there is substantial potential for great economic loss to the United States upon disposition. In addition, the United States incurred substantial storage costs during the time that the asbestos was in national stockpile. Therefore, we at GSA felt it extremely important to fix the terms of dispositions to avoid further avoidable loss
 ....
 The [contracts for sale] provided that the materials were sold "as is" to be delivered "freight on board" carrier's conveyance at the storage location, and expressly disclaimed any express or implied warranty....
 The asbestos offered for sale had usually been stockpiled for years. To test, warranty, repackage, or relabel such materials at the time of disposal or to incur avoidable handling or transportation expenses would have resulted in avoidable cost to the government. Moreover, no funds were allocated or authorized for repackaging or labeling. Therefore, the invitation for bids prepared at my direction and which I approved required that the asbestos be sold in the original packaging, with the same markings and in the same condition as it was acquired and stored.
 With respect to asbestos, as with the other stockpiled commodities, we solicited bids only from knowledgeable industry members who regularly used and handled substantial quantities of the materials and who had an opportunity to inspect the materials where they were stored. We assumed these buyers would be better qualified than our own storage personnel to properly transport, unpackage, handle and use the material in their manufacturing processes.
 App. 66-70 (emphasis added).
 
 
 [8]
 The discretionary function exception operates as a bar to jurisdiction. See Gibson v. United States, 457 F.2d 1391, 1392, n. 1 (3d Cir.1972)
 
 
 [9]
 This case presents the question of the government's duty as a supplier of a dangerous chattel, one of the issues in our recent opinion in Merklin v. United States, 788 F.2d 172 (3d Cir.1986). The government in Merklin, however, only asserted its immunity from suit as a regulator of the radioactive materials processing plant, and did not argue that the exception applied to the government's conduct in supplying radioactive materials to the plant
 
 
 [10]
 The fact that the plan implemented may, in hindsight, seem ill-advised, imprudent, or lacking in a rational policy basis "in no way changes the character of the function under scrutiny"; rather the lack of a rational or careful plan or even the lack of policy goes to the actor's abuse of discretion. General Public Utilities Corp., 745 F.2d at 245; see Shuman v. United States, 765 F.2d 283, 290 (1st Cir.1985) (government's lack of care in developing policy, or in lacking any policy on an issue, is protected by the discretionary function exception)
 
 
 [11]
 Our opinion does not imply that plaintiffs are without a judicial remedy when an agency designs and implements programs pursuant to Congressional direction. In many instances, the government's conduct will be reviewable under the Administrative Procedure Act either as "arbitrary, capricious, an abuse of discretion" or "in excess of statutory jurisdiction, authority or limitations." See 5 U.S.C. Secs. 706(2)(A), 706(2)(C) (1982); Rogers, A Fresh Look at Agency "Discretion", 57 Tul.L.Rev. 776, 808-22 (1983)
 
 
 [12]
 The government's liability as a seller of chattels pursuant to a surplus property disposal program has been raised in the postal-jeep sales litigation, where purchasers of the jeeps allege that the government negligently omitted warnings concerning the jeeps' handling characteristics. The one circuit court to consider this question held that the discretionary function exception applied. See Ford v. American Motors Corp., 770 F.2d 465 (5th Cir.1985); see also Shirey v. United States, 582 F.Supp. 1251 (D.S.C.1984). But see Galanos v. United States, 608 F.Supp. 360 (E.D.Mich.1985)
 
 
 [13]
 We need not decide here whether or not Griffin has survived Varig Airlines. We find that Griffin differs from the case before us in that there we were faced with the performance of a specific scientific evaluation in the execution of a regulation. The regulation, and not the scientific evaluation, involved policy determinations; for that reason, the court held that the scientific evaluation was not protected by the discretionary function exception. In the present appeal, however, we are faced with the formulation of a means to carry out a congressional directive. That formulation did involve policy determinations and it is, therefore, shielded by the discretionary function exception
 
 
 [14]
 Cassiar argues that the Dalehite Court held that there was no duty to warn because the applicable ICC regulations did not provide for (and may have prohibited) such warnings. According to appellee, the fact that the government followed the ICC regulations was the sole reason that the discretionary function exception shielded the decision not to warn. We disagree with this reading of Dalehite. The Court held that the decision not to warn was within the Army's discretion, a conclusion supported by (but not dependent on) "the fact that the ICC's regulations, for instance, could not be attacked by claimants under the [FTCA] by virtue of the first phrase of Sec. 2680(a)." Dalehite, 346 U.S. at 42, 73 S.Ct. at 971
 
 
 [15]
 Bell argues that we should remand for an evidentiary hearing on the issue of the GSA's interpretation of the Stock Piling Act's direction to minimize "avoidable cost." We do not believe that further development of the record is warranted. It is the challenged conduct, not the subjective interpretation of the authority to engage in such conduct, that courts examine to determine whether the exception applies. Commissioner Harlan's affidavit adequately describes the discretion Congress gave GSA to design and manage the asbestos disposal program. The affidavit is unrebutted, despite the fact that appellees have had the opportunity to develop evidence contradicting Harlan's affidavit since December 1982