**Ella Mae WELLS, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 85–3333.

United States District Court, District of Columbia.

Feb. 2, 1987.

Frederick M. Baron, Charles S. Siegel, Baron & Budd, Dallas, Tex., Anthony Roisman, Trial Lawyers for Public Justice, Washington, D.C., for plaintiffs.

Arvin Maskin, Jo Brooks, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

This civil proceeding is brought against the United States under the Federal Tort Claims Act ("FTCA" or "Act"), 28 U.S.C. §§ 1346(b), 2671–2680 (1982), by 571 persons residing in the Dallas, Texas area. Plaintiffs seek monetary recovery for physical and psychological harms and property damage which they and their minor children allegedly suffered as a direct and proximate result of the negligent acts and omissions of the Environmental Protection Agency ("EPA")[1] in monitoring, evaluating, regulating and communicating knowledge of public health risks and lead pollution hazards in their neighborhoods.

---

1. For ease of reference, defendant United States and the EPA will be referred to collectively as the "government."

In Count I, plaintiffs allege that, at all relevant times, EPA knew that toxic lead pollution existed and that the residents of the Dallas area were exposed to lead pollution risks, yet the government negligently failed to correct or require those responsible for the contamination to correct the problem. Complaint ¶ 9(d). Plaintiffs further contend that EPA was negligent in failing to adequately warn of the pollution hazards. Complaint ¶¶ 9(a), (d), (e). Count II charges EPA with having violated its statutory mandate as embodied in the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* ("CAA"). Complaint ¶ 10. Specifically, plaintiffs allege that EPA failed to order the State of Texas to submit a plan for the "implementation, maintenance, and enforcement" in the Dallas area of primary and secondary air quality standards as required by section 110 of the CAA, 42 U.S.C. § 7410.

The government has moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(6) (failure to state a claim upon which relief can be granted), relying upon two primary exceptions to the FTCA. First, the government argues that no claim may be asserted for what it maintains was no more than a "failure to perform a discretionary function or duty ...," citing 28 U.S.C. § 2680(a). Second, the government contends that it is immunized against liability for either intentional or negligent misrepresentation under 28 U.S.C. § 2680(h). In addition, the government points out that it is subject to liability only in the same manner and to the same extent as a private person, citing 28 U.S.C. §§ 1346(b) and 2674, and that because it was engaging in a uniquely governmental function with regard to the occurrences in question, it is effectively immune from liability under the Act.

Finally, the government asserts that since all the plaintiffs reside in the State of Texas and because the acts or omissions complained of relative to the pollution problem all occurred there, the complaint should be dismissed for improper venue under Fed.R.Civ.P. 12(b)(3). It thus argues that venue would be proper only in the Northern District of Texas, under 28 U.S.C. § 1402(b).

For the reasons set forth below, the Court determines that the plaintiffs' claims come within the discretionary function and misrepresentation exemptions of the FTCA, or alternatively, that under 28 U.S.C. § 2674, liability does not lie against the United States because a private person would not be so liable under similar circumstances. Accordingly, the Court does not reach the question of whether venue is proper in this district.[2]

## BACKGROUND

In support of their complaint, plaintiffs allege the following facts, which, for purposes of resolving the motion, will be accepted as true. *See Papasan v. Allain,* —— U.S. ——, 106. S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Gregg v. Barrett,* 771 F.2d 539, 547 (D.C.Cir.1985). For some time EPA has monitored and evaluated the levels of lead pollution in areas surrounding the business operations of three lead manufacturing companies,[3] located near plaintiffs' neighborhoods.

Plaintiffs charge that while the EPA knew of high levels of lead pollution in their neighborhoods for many years, it nonetheless failed to remedy the situation. The charges are based in large part on oversight hearings conducted in 1983 by a subcommittee of the House Committee on Public Works and Transportation. Specifically, an EPA regional office conducted a study in the Dallas area, analyzing the levels of lead in soil samples and in the

---

**2.** Because of this determination, the Court need not reach the government's contention that certain of the 571 claims are barred under § 2675(a) of the FTCA because the claimants did not file the required administrative claims before filing this suit.

**3.** The three manufacturers named in the complaint are the RSR Corporation, Dixie Metals Corporation and N.L. Industries.

blood of school children. That study found that blood lead levels were elevated and determined, according to a proposed testing standard of 1000 parts per million, that soil samples also contained elevated concentrations of lead.

Following the conclusion of this study, the RSR Corporation, one of the three lead manufacturers in the area, made a written commitment to EPA to clear up the pollution problem by replacing soil found to have concentrations of lead over 1000 parts per million. Instead of accepting this offer, Dr. John Hernandez, the Deputy EPA Administrator stationed in Washington, D.C., decided that further study was needed to determine whether the 1000 parts per million standard used in the regional study was an appropriate testing level for lead. Dr. Hernandez felt that this level might be too stringent a standard on which to base a clean up program; however, there existed at the time evidence that the standard of 1000 parts per million was in fact quite lax. He also decided that 18 months of additional blood testing should be conducted.

Plaintiffs further charge that, following completion of the regional study, Washington EPA headquarters deleted information from a prepared official press statement in order to mislead the public as to the extent of the lead contamination. Specifically, EPA headquarters is alleged to have deleted all information indicating that elevated levels of lead had been found in the blood of children and in the soil around school playgrounds and day care centers. Plaintiffs also claim that Dr. Norman Dyer, Chief of the EPA Pesticides and Toxics Branch, was discouraged from keeping any notes or memoranda of his work conducted as part of the regional study. Dr. Dyer's superiors at EPA allegedly wished to conceal the extent of the danger from the public, especially that faced by the neighborhood children.

Plaintiffs also assert that EPA acted in violation of its statutory directive as embodied in the CAA, 42 U.S.C. §§ 7401 *et seq.*, and in so doing directly and proximately caused their injuries. Specifically, they charge that EPA failed to carry out its duty to timely and properly approve or disapprove a state implementation plan for lead clean-up in the Dallas area, as required by 42 U.S.C. § 7410.

## ANALYSIS

### A. Liability Under the FTCA

 In a tort claim brought against the United States, damages may be obtained

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). That section makes it quite clear that liability may be assessed against the United States only if a private person would be liable under comparable circumstances. Similarly, section 2674 provides that the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances...." Therefore, the relevant question becomes whether the United States breached duties owed plaintiffs analogous to duties prescribed by *local* law for private actors. *Art Metal—U.S.A., Inc. v. United States*, 753 F.2d 1151, 1157–59 (D.C.Cir.1985). A violation of a duty imposed by federal statute, without more, does not give rise to a cause of action under the FTCA, *id.* at 1157, nor was it Congress' intention that the FTCA be used to "test the validity of or provide a remedy on account of ... discretionary acts even though negligently performed and involving an abuse of discretion." H.R.Rep. No. 2245, 77th Cong., 2d Sess. 10; S.Rep. No. 1196, 77th Cong., 2d Sess. 7; H.R.Rep. No. 1287, 79th Cong., 1st Sess. 5–6; Hearings before House Com. on Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess. 33, *quoted in Dalehite v. United States*, 346 U.S. 15, 29 n. 21, 30, 73 S.Ct. 956, 964 n. 21, 965, 97 L.Ed. 1427 (1953). Rather, it was Congress' purpose to provide a remedy

for individuals harmed through the commission by government employees, acting within the scope of their employment, of acts most easily characterized as common-law torts.[4] 346 U.S. at 27–28, 73 S.Ct. at 963–64.

■ To a great extent, the requirement that liability would have to lie against a private person under like circumstances before it may lie against the United States merely establishes the foundation for the "discretionary function" exception codified at 28 U.S.C. § 2680(a). In other words, because only governmental entities engage in the kinds of regulatory activities that fall within the discretionary function exception, there could be no rule of private liability analogous to which a governmental actor could be sued. Similarly, because the discretionary function and the "misrepresentation" exceptions of section 2680(h) are rooted in common ground,[5] the "private liability" requirement may be seen as the predicate for exempting government misrepresentations from tort liability under the FTCA. Since the "private liability" requirement is, for purposes of analyzing the instant case, largely congruent with the two specific exceptions relied upon by the government, it will not for the most part be considered separately. Nevertheless, plaintiffs raise one argument as to the applicability of that requirement that must be dealt with briefly.

Plaintiffs argue that, because the government sought to regulate the pollution problem for their benefit, it may be held liable under the "Good Samaritan" doctrine set out in the *Restatement (Second) of Torts* §§ 323, 324A (1965). That doctrine provides that one who renders services for another or for a third person, in the absence of a duty otherwise to act, may be liable for his failure to exercise reasonable care, where such failure increases the risk of harm to the other party, where reliance is placed upon the actor's under-

taking, or where the actor performs a duty owed by the other to the third person. *See, e.g., Zabala Clemente v. United States*, 567 F.2d 1140, 1145 (1st Cir.1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978).

Bearing in mind that a motion to dismiss will be granted only if it is clear that plaintiff can adduce no set of facts that would warrant a grant of relief, *see Gregg*, 771 F.2d at 547, one could conceive of circumstances that might support plaintiffs' allegation that (1) EPA's failure to exercise reasonable care in carrying out its functions increased the risk of harm to them; that (2) they relied upon EPA to protect them from such harm, or that (3) in undertaking to control the pollution problem, EPA performed a duty that the Dallas area manufacturers owed persons residing near their facilities. Analysis of such claims would require not only the elaboration of a more complete factual record, but also a review of applicable Texas law. However, the Court is spared that task because, even if plaintiffs could demonstrate the validity of any of the above propositions, their claims would still be barred by the discretionary function and misrepresentation exceptions to FTCA liability. Such a result is certainly not anomalous, for a contrary result would override the specific exemptions enumerated in the Act. *See Zabala Clemente*, 567 F.2d at 1145–46. And as pointed out, *supra* note 4, not all common-law torts, if committed by the government, give rise to liability. Hence, whether the United States could otherwise be held liable under the "Good Samaritan" doctrine is not controlling in the face of specific exemptions from liability.

**B. The Discretionary Function Exception**

■ As consistently noted, most recently in *United States v. S.A. Empresa de Via-*

---

4. It is interesting to note that, under the FTCA, liability does not lie against the United States for a host of otherwise actionable common-law torts. *See* 28 U.S.C. § 2680(h) (no claim for assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of pro-

cess—unless committed by investigative or law enforcement officers—or for libel, slander, misrepresentation, deceit, or interference with contract rights).

5. *See infra* 724.

cao Aerea Rio Grandense, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984) ("Varig Airlines"), "[t]he [FTCA] did not waive the sovereign immunity of the United States in all respects, ... Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." One such exception, codified at 28 U.S.C. § 2680(a), provides that the Act does not embrace

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

As a unanimous Court pointed out in Varig Airlines, the "discretionary function exception ... marks the boundaries between Congress' willingness to impose tort liability upon the United States and its desire to protect certain government activities from exposure to suit by private individuals." 467 U.S. at 808, 104 S.Ct. at 2762. The Court underscored the limited nature of the waiver of sovereign immunity, stressing that the discretionary function exception was meant to exempt from the Act claims arising from the regulatory activities of federal agencies. Id. at 809–10, 104 S.Ct. at 2762–63. That exemption was intended to embrace such activities, even where the agency abuses its discretion in carrying out its statutory mandate. Id. at 809, 104 S.Ct. at 2762 (quoting Hearings on H.R. 5373 and H.R. 6463 before House Com. on the Judiciary, 77th Cong., 2d Sess. 28, 33 (1942) (statement of Assistant Attorney General Francis M. Shea)).

■ The Court also took the opportunity to reaffirm the holding of Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), that the exception includes not only the "initiation" of programs or activities, but also "determinations made by executives or administrators in establishing plans, specifications or schedules of operations." 467 U.S. at 811, 104 S.Ct. at 2763 (quoting Dalehite, 346 U.S. at 35–36, 73 S.Ct. at 968). The Court went on to enumerate two principles to be used in applying Dalehite. First, the rank of the government actor responsible for the alleged misfeasance is not relevant; rather, it is the nature of the conduct in question that governs the applicability of the exception. Id. at 813, 104 S.Ct. at 2764. Second, "the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals[,]" id. at 813–14, 104 S.Ct. at 2764, are presumptively exempt from liability as a means of "prevent[ing] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 814, 104 S.Ct. at 2765.

In this proceeding, plaintiffs dispute that the government's conduct involved judgment of a social, economic or political policy nature sufficient to invoke the discretionary function exception. They argue that the decisions made by EPA did not involve policy considerations at all, but rather represented negligent "scientific determinations" that fall outside the discretionary function exception. To support that claim, plaintiffs assert that the discretionary function exception is not applicable where the challenged decision is made at an "operational" rather than a "planning" or "policy" level, citing a number of pre-Varig cases.

■ One such case, upon which plaintiffs principally rely for the proposition that discrete, "objective" scientific determinations may fall outside the exception, Griffin v. United States, 500 F.2d 1059 (3d Cir.1974), has been questioned by the court that decided it as being possibly at odds with Varig Airlines. See Smith v. Johns-Manville Corp., 795 F.2d 301, 309 (3d Cir.1986); General Public Utilities Corp. v. United States, 745 F.2d 239, 246 (3d Cir.1984), cert. denied, 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985). While not expressly overruled, Griffin has been distinguished by the Third Circuit and is of questionable precedential value. See 795 F.2d at 309 n. 13; 745 F.2d at 246.

*Griffin* held that the release of a certain quantity of polio vaccine tested and found unsafe by government standards was an act that was not protected by the discretionary function exception. The Court concluded that "[w]here the conduct of Government employees in implementing agency regulations requires only performance of scientific evaluation and not the formulation of policy, we do not believe that the conduct is immunized from judicial review as a 'discretionary function.'" 500 F.2d at 1066. When limited to its facts, *Griffin* does not compel a holding that the conduct complained of by plaintiffs in the instant case falls outside the exception. On the contrary, unlike those found actionable in *Griffin*, the acts and omissions charged here comprised the formulation of regulatory policy—whether and to what extent EPA should enforce environmental and health standards. "When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Varig Airlines*, 467 U.S. at 819–20, 104 S.Ct. at 2767. Therefore, such acts or omissions cannot give rise to liability under the FTCA.

In a memorandum of supplemental authority, filed upon invitation of the Court, plaintiffs have attempted to rehabilitate *Griffin* or to otherwise demonstrate that it is still good law. To that end, they argue that *Griffin* has been cited with approval in a recent case from this Circuit, *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187 (D.C.Cir.1986). *Red Lake* cites *Griffin* only for the proposition that actions undertaken outside the scope of an official's authority do not remain within the protections of the discretionary function exception.[6] 800 F.2d at 1196 (citing *Griffin*, 500 F.2d at 1068–69). That rather unexceptional proposition has no bearing on this case. Here, the officials whose acts are complained of cannot be said to have contravened any "mandatory" or "non-discretionary [regulatory] command." *Griffin*, 500 F.2d at 1068. Even if they *abused* the discretion they were bound to exercise, that dereliction would not support an action under the FTCA.

In another authority relied upon by plaintiffs, *Alabama Electric Cooperative, Inc. v. United States*, 769 F.2d 1523 (11th Cir. 1985), the court indicated that it felt that, if limited to its facts, *Griffin* may be consistent with *Varig Airlines*. 769 F.2d at 1529 n. 2. Yet if limited to its facts, *Griffin* is inapplicable to the present situation. As discussed *supra*, the weighing of costs and benefits where concededly permitted is precisely the kind of discretionary function that Congress was seeking to protect. Limited to its facts, *Griffin* merely holds that the failure to carry out a mandatory directive does not involve the exercise of discretion. Similarly, *Alabama Electric* holds that, absent some cost/benefit or policy analysis, the negligent design of a structure by a governmental entity (there, the Army Corps of Engineers) may be actionable under the common-law of engineering malpractice. 769 F.2d at 1534–37. In other words, if a governmental actor deliberately, after weighing the alternatives, decides upon a course of action that injures another, that person has no cause of action under the FTCA. *See id.* at 1534. However, if the actor simply through negligence or oversight does the wrong thing, suit by a person injured thereby will not be barred by the discretionary function exception. *Id.* at 1531–34 (discussing cases).[7]

**6.** In *Red Lake,* the court held that acts of an FBI agent performed outside his jurisdiction could not be said to fall within the exception; acts undertaken within his sphere of authority were protected. 800 F.2d at 1197–98. Plaintiffs here do not suggest that Dr. Hernandez had no *authority* to make the kinds of decisions that he did; they simply disagree with the conclusions that he reached.

**7.** *Collins v. United States,* 783 F.2d 1225 (5th Cir.1986), also cited by plaintiffs, adds nothing new to the present analysis. There, the court held that a failure to perform a mandatory regulatory action (specifically, the failure to close a mine after levels of methane gas had exceeded critical levels) was actionable under the FTCA. *Id.* at 1230–31. The court expressly noted that the government had failed to suggest a policy reason for what was done. *Id.* at 1230. The court also may have to some extent been influenced by plaintiffs' allegations that the actions of the official in question were willful or

Recently, the Seventh Circuit applied *Varig Airlines* and *Dalehite* to claims quite similar to those at issue here. In *Cisco v. United States*, 768 F.2d 788 (7th Cir.1985), the plaintiffs brought an FTCA claim for personal injuries and property damage resulting from exposure to dioxin-contaminated soil used as a landfill in Jefferson County, Missouri. They charged EPA with negligence in failing to require that the contaminated soil be removed and in failing to warn of the pollution hazard. Affirming the dismissal of the suit for lack of subject matter jurisdiction, the court reasoned that

> in deciding not to warn Cisco about the contaminated landfill and in deciding not to remove the contaminated dirt from the landfill, the EPA made political, social and economic judgments pursuant to its grant of authority. Cisco may not challenge those judgments under the FTCA because they fall within the discretionary function exception of 28 U.S.C. § 2680(a).

*Id.* at 789–90.

Other courts addressing similar issues under the FTCA have consistently held that conduct implicating the enforcement of safety or health regulations is exempt from liability to the extent that the government actors are in any way engaged in making policy decisions, broadly construed. *See, e.g., Smith v. Johns-Manville Corp.*, 795 F.2d 301 (3d Cir.1986) (no liability for selling surplus asbestos without warranties); *Begay v. United States*, 768 F.2d 1059 (9th Cir.1985) (no duty to warn uranium miners of safety hazards); *Shuman v. United States*, 765 F.2d 283 (1st Cir. 1985) (no duty to warn employees of government contractor of asbestos hazards or to take steps to eliminate them); *General Public Utilities Corp. v. United States*, 745 F.2d 239 (3d Cir.1984), *cert. denied*, 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365

(1985) (no duty to warn of defects in nuclear plant design); *First National Bank in Albuquerque v. United States*, 552 F.2d 370 (10th Cir.), *cert. denied*, 434 U.S. 835, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977) (no liability for improper labeling and registration of fungicide); *In re: Consolidated United States Atmospheric Testing Litigation*, 616 F.Supp. 759 (N.D.Cal.1985) (no liability for failure to warn of or take steps to minimize hazards surrounding testing of nuclear weapons).[8]

■ With respect to the actions complained of in this proceeding, EPA similarly had broad discretion in deciding the means by which to manage the pollution problem in Dallas. Although plaintiffs do not cite any statutory authority, other than the Clean Air Act, for the proposition that EPA was under an affirmative duty to protect them from lead pollution hazards, the statutes which in fact govern EPA's conduct offer wide judgmental latitude to the agency in its determination of what, if any, action need be taken in response to a particular environmental concern. The enactment of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, P.L. 96–510, 94 Stat. 2767, *codified at* 42 U.S.C. §§ 9601 *et seq.* (1982) ("CERCLA"), provided EPA with authority to "consider," "balance," and "select" a variety of measures in response to a particular environmental contingency. In similar fashion, the Resource Conservation and Recovery Act, *codified at* 42 U.S.C. §§ 6901 *et seq.* (1982), provides broad authority to the agency in performing activities affecting hazardous waste management and the manufacture and disposal of chemicals.

Plaintiffs allege that EPA violated statutory duties mandated under the Clean Air Act. The CAA was enacted to protect and enhance the quality of the nation's air resources by, among other things, providing

---

even criminal, involving tampering with air samples. *See id.* at 1227. The court did note that the official pled guilty to conspiracy to defraud the government. *Id.* at 1227 n. 2.

**8.** Plaintiffs rely heavily on *Allen v. United States*, 588 F.Supp. 247 (D.Utah 1984), where the court held that the discretionary function exception did not bar claims for radiation exposure

when the governmental decision-makers did not make studied "eyes open" policy judgments. *Id.* at 329–40. That construction of the exception seems to represent a minority view. *See, e.g., Smith v. Johns-Manville Corp.*, 795 F.2d 308–09. *Allen* is currently on appeal. No. 84–2126 (10th Cir.).

technical and financial assistance to state and local governments in connection with the development and execution of their air pollution prevention and control programs. 42 U.S.C. § 7401(b)(3). The regulatory program established by the CAA places on each state the primary responsibility for assuring air quality within its geographic area by requiring each state to submit an implementation plan specifying the manner in which it will achieve and maintain national air quality standards. *Id.* § 7407. Prior to establishing those air quality standards for a given air pollutant, the Administrator must list the air pollutant as a substance which "in his judgment" may reasonably be anticipated to endanger public health or welfare. *Id.* § 7408(a). Within nine months after the promulgation of a national primary air quality standard, each state is required to adopt and submit to the Administrator a plan which provides for the implementation, maintenance, and enforcement of the primary standard in each air quality control region within the state. *Id.* § 7410(a)(1). The Administrator then has four months from the date required for submission of the state implementation plan to approve the entire state plan or any portion of it, or to disapprove it. *Id.* § 7410(a)(2).

In short, as discussed above, statutes that govern the scope of EPA's activities leave the agency free to exercise its judgment as to what is the "best course," *Dalehite,* 346 U.S. at 34, 73 S.Ct. at 967, to achieve the goals that Congress has set for it.

■■■■■■ EPA's authority to enforce environmental standards generally, or to respond to a particular environmental problem as it arises, did not require the agency to warn residents of local toxic pollution or to have those wastes removed. Congress has left EPA to decide the manner and the extent to which it will protect individuals from exposure to hazardous wastes. Such decisions represent the exercise of "discretionary regulatory authority of the most basic kind[,]" *Varig Airlines,* 467 U.S. at

819–20, 104 S.Ct. at 2767, and, hence, do not give rise to liability under the FTCA.

## THE MISREPRESENTATION EXCEPTION

The government contends that even if it misrepresented and failed to warn plaintiffs of the extent of the lead pollution problem it is immune from liability under the misrepresentation exception of the Act, 28 U.S.C. § 2680(h).[9] Such immunity would bar claims arising out of negligent as well as willful misrepresentation. *United States v. Neustadt,* 366 U.S. 696, 702–07, 81 S.Ct. 1294, 1298–1301, 6 L.Ed.2d 614 (1961).

■■■■ Plaintiffs assert that the misrepresentation exception is inapplicable in that it applies only to claims arising in a commercial context. It is true that the tort of "misrepresentation" has more often arisen from claimed "invasion[s] of interests of a financial or commercial character, in the course of business dealings." *Neustadt,* 366 U.S. at 711 n. 26, 81 S.Ct. at 1302 n. 26. This general observation, however, does not mean that section 2680(h) has not been applied to actions for personal injuries or property damage based on alleged misrepresentations. Indeed, since *Neustadt* a number of courts have applied the exception to both personal injury and property damage claims. *See, e.g., Baroni v. United States,* 662 F.2d 287 (5th Cir.1981), *cert. denied,* 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983) (recovery for property damage barred); *Reynolds v. United States,* 643 F.2d 707 (10th Cir.), *cert. denied,* 454 U.S. 817, 102 S.Ct. 94, 70 L.Ed.2d 85 (1981) (claim for personal injury barred).

In reviewing the scope of the misrepresentation exception, the Supreme Court has indicated that, where the misrepresentations alleged are "not essential" to an otherwise actionable claim, the exception will not bar that claim. *Block v. Neal,* 460 U.S. 289, 296–98, 103 S.Ct. 1089, 1093–94, 75 L.Ed.2d 67 (1983). The plaintiff in *Block* had contracted with a builder for the construction of a house according to Farmers

---

**9.** That section has been discussed *supra* note 4.

Home Administration ("FmHA") specifications. A FmHA representative inspected the work and reported that it complied with construction specifications. In fact, the workmanship was defective in a number of respects. After the builder refused to cure the defects, plaintiff sued FmHA for the cost of the required repairs. In holding that the claim was not barred by the misrepresentation exception, the Court pointed out that the gravamen of the complaint was not that the plaintiff was misled by the erroneous inspection report, but rather that, after undertaking to supervise the construction, FmHA did so in a negligent manner. The Court thus held that the plaintiff was entitled to attempt to prove at trial facts that would allow recovery under the "Good Samaritan" doctrine.[10] 460 U.S. at 297, 103 S.Ct. at 1094.

■ While *Neal* advises caution in dismissing a claim that is not in fact grounded in misrepresentation, the decision does not suggest that, whenever a separate cause of action can be winnowed out from a claim for misrepresentation, that cause of action can be brought under the FTCA. In the instant case, once plaintiffs' claim for misrepresentation is removed, what is left is a claim premised upon a classically discretionary function—a claim that is, therefore, barred under the FTCA. And, of course, plaintiffs are not suggesting that their claim for misrepresentation be disregarded; rather, they rely heavily upon express charges of willful disinformation. To that extent, they seek to bring claims that are clearly excluded by the misrepresentation exception.

Moreover, because plaintiffs' misrepresentation claim is so closely tied to their other allegations, it would be anomalous to hold that a claim may be brought for misinforming persons about the lead pollution problem, but not for mishandling the problem in other respects. Rather, plaintiffs' entire cause of action stems from an activity that Congress believed should not be scrutinized by the medium of a tort action

for damages. *Varig Airlines*, 467 U.S. at 809–10, 104 S.Ct. at 2762; *Dalehite*, 346 U.S. at 29–30, 73 S.Ct. at 964–65.

## CONCLUSION

The controlling authorities governing the imposition of and immunity from liability under the FTCA clearly command dismissal of this proceeding under the discretionary function and misrepresentation exceptions of the Act, and because the "private liability" requirement has not been met. This is not to say that persons in plaintiffs' position can never achieve redress for a government agency's mishandling of important environmental, health, or safety problems. It is only to say that such redress cannot be achieved by suing the government for damages when it abuses its discretion in regulating the matters entrusted to it. Rather, the appropriate medium for challenging such governmental misfeasance is a suit under the Administrative Procedure Act, *see Smith v. Johns-Manville Corp.*, 795 F.2d at 308 n. 11, or if such a suit would not be appropriate, a petition in Congress. *See Begay*, 768 F.2d at 1066.

An appropriate order will be entered.

## ORDER

For the reasons set forth in the Court's **Memorandum Opinion** of this date, it is this 2nd day of February, 1987,

## ORDERED

That the defendant's motion to dismiss is **granted** and that the above-captioned matter is **dismissed with prejudice.**

---

**10.** Presumably, oversight of the construction was not considered a discretionary function or otherwise exempted from FTCA liability, and for that reason the Court apparently felt that the "Good Samaritan" doctrine was applicable.